MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:    2019 ME 81
Docket:      Ken-18-56
Argued:      November 8, 2018
Decided:     May 28, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

TERRENCE N. TOWNES

HUMPHREY, J.

[¶1]  In this appeal we examine assertions that sanctions imposed against the State for discovery violations and for failing to comply with court orders were insufficient and that the defendant was deprived of his fundamental right to an impartial jury that represented a fair cross section of his community.

[¶2]  Terrence N. Townes appeals from a judgment of conviction entered by the Superior Court (Kennebec County, *Murphy, J.*), as a result of a jury verdict, for aggravated assault (Class A), 17-A M.R.S. § 208(1)(A-1) (2018), and violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2018). Townes was sentenced to twenty-five years in prison, with all but twelve years suspended, followed by four years of probation.  We affirm the judgment.

## I.  BACKGROUND

[¶3]  "Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt."  *State v. Burton*, 2018 ME 162, ¶ 2, 198 A.3d 195 (quotation marks omitted).

[¶4]  On October 24, 2016, the manager of the residential complex where Townes lived ordered Townes to leave the premises because Townes had threatened another tenant.  Townes then struck the manager, knocked her to the floor, kicked her, got on top of her, and punched her in the face several times.  The owner of the complex tried to stop Townes by hitting him in the back with a fire extinguisher, injuring his own shoulder in the process.  Townes gained control of the fire extinguisher and struck the manager in the face with it, causing her permanent blindness in one eye.

[¶5]  One of the Augusta police officers who responded to the scene observed Townes shouting at two women as he followed them out of the complex.  When that officer approached Townes, he observed blood on Townes's shirt, saw Townes place his hands behind his head and drop to his knees, and heard him state "I've done something."  Townes was taken into custody, and as he was being placed in the cruiser, he kicked another officer in

the chest. Townes also made inculpatory statements after he was restrained and placed in the police cruiser.

[¶6] On December 21, 2016, a grand jury returned a six-count indictment, which included the two counts for which Townes was subsequently convicted—aggravated assault (Count 2) and violating a condition of release (Count 6).[1]

A. Discovery Violations and Sanctions

[¶7] Townes filed a motion for a bill of particulars in March 2017 seeking clarification of the allegations in Counts 1 through 3 of the indictment and copies of medical records compiled by the medical first responders that had not been provided to him. He also filed a motion for sanctions alleging that the State committed a series of discovery violations and failed to comply with several court orders. Townes withdrew his motion for a bill of particulars on May 18,

---

[1] The remaining counts were disposed of as follows: Count 1, elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A) (2018), resulted in a hung jury and a mistrial; Count 3, aggravated assault (Class A), 17-A M.R.S. § 208(1)(A-1) (2018), was dismissed as a sanction for the State's discovery violations; Count 4, assault on a police officer (Class B), 17-A M.R.S. §§ 752-A(1)(A) (2018), 1252(4-A) (2017), resulted in an acquittal pursuant to M.R.U. Crim. P. 29(a); and Count 5, assault (Class C), 17-A M.R.S. §§ 207(1)(A) , 1252(4-A) (2018), resulted in a judgment of acquittal entered by the court after the jury found Townes not guilty.

Title 17-A M.R.S. § 1252 was amended after Townes was indicted to expand the list of prior convictions subject to the section's sentence enhancements. *See* P.L. 2017, ch. 336, § 1 (effective Aug. 1, 2018) (codified at 17-A M.R.S. § 1252(4-A). The amendment did not affect the charges against Townes at the time of trial and therefore would not have affected the case.

4

2017, and, on the same date, the court (*Billings, J.*) granted Townes's motion for sanctions and ordered the State to furnish the requested records.

[¶8] In November 2017, Townes filed a second motion for a bill of particulars, again seeking clarification of Counts 1 through 3. In addition, he filed a motion to dismiss those counts as a sanction for the State's discovery violations. The State finally provided the requested medical records on December 5, 2017, three days before the beginning of the trial term that included Townes's case, and sent an email to defense counsel stating that Counts 1 and 2 were charged in the alternative; the State's response made no mention of Count 3. The jury was selected on December 8, 2017, and the trial began on December 19, 2017. On the first day of trial, Townes filed a motion in limine with regard to Count 4, seeking to exclude the testimony of the officer who had allegedly been kicked, and arguing that the State had not provided any information about the bodily injuries that it alleged that Townes caused.

[¶9] The court denied Townes's motion to dismiss Counts 1 and 2, but did sanction the State for its failure to comply with the discovery order by dismissing Count 3 of the indictment. The court also prohibited the State from introducing the testimony and records of the medical first responders regarding injuries they treated as a result of the incident, as well as the

testimony of the officer who was allegedly kicked, and prohibited the State—but not Townes—from calling a witness who had disclosed to the State that she was vision-impaired.[2]

B.     Jury Selection

[¶10]   On the first day of trial, Townes raised two issues of jury impartiality.  First, Townes filed a motion for a new jury venire, arguing that, by having informed the jurors that the defense attorneys were "from Portland," the court had caused prejudice to him.  The court denied the motion.

[¶11]  Second, Townes—who identifies as African-American—moved to dismiss the indictment,[3] arguing that he would "not be tried before a jury of his peers as is constitutionally required."  Citing our decision in *State v. Holland,* 2009 ME 72, 976 A.2d 227, and applying the test articulated in *Duren v. Missouri*, 439 U.S. 357, 364 (1979), the trial court denied the motion,

---

[2]   During a pre-trial interview in the days leading up to the docket call, a witness informed the State that she was blind.  The State immediately notified the defense of this fact and its intention not to call this witness at trial.  Townes alleged a discovery violation and initially requested a dismissal or, at the least, a continuance, to allow him to adjust strategies, arguing, without support, that this witness may have influenced other witnesses who gave statements at the scene of the incident.

The court's docket record indicates that the witness was "deaf" and not blind as the parties stated on the record; that docket entry appears to have been in error.

[3]  On appeal, Townes alleges that his motion was for a new jury panel.  During the hearing on what the court identified as "the *Holland* motion," there was no discussion of the specific relief requested by the defendant.

6

concluding that Townes had not established a prima facie case that the jury selection process violated the Sixth Amendment's requirement that jurors represent a fair cross section of the community.

## II.  DISCUSSION

[¶12]  Townes now challenges the sufficiency of the sanctions imposed on the State and the court's decision not to investigate the jurors' impartiality or grant his motion for a new jury venire.

A.    Sufficiency of the Sanctions

[¶13]  Townes argues that the sanctions imposed on the State were insufficient to remedy the prejudice caused by the discovery violations.  We have consistently recognized that a trial court confronted with a discovery violation has broad discretion in determining what sanction, if any, is appropriate.  *State v. Poulin*, 2016 ME 110, ¶¶ 27-28, 144 A.3d 574.  We review such determinations for an abuse of discretion and will order a new trial only where the discovery violation prejudices the defendant to the extent that it deprived him of a fair trial.  *State v. Cruthirds*, 2014 ME 86, ¶ 37, 96 A.3d 80 (quotation marks omitted).

[¶14]  The trial court did not abuse its broad discretion to impose sanctions for the State's discovery violations.  It dismissed Count 3 (aggravated

assault); excluded evidence relevant to Counts 1, 2, and 5; and, as to Count 4, barred any testimony from the officer whom Townes allegedly kicked. Further, Townes conceded that the court's decision to bar the witness who disclosed she was blind from testifying was sufficient to "resolve [his] concerns" about the unreliability of her testimony or her potential influence on the testimony of other witnesses. Under these circumstances, the court did not abuse its discretion when it granted these, but not other, requested sanctions, nor did the court's decision deprive Townes of a fair trial. *Cf. id.* ¶¶ 34, 37-38.

B.     Right to an Impartial Jury

[¶15]   Townes also contends that he was deprived of his Sixth Amendment right to "an impartial jury of the State and district" where the crimes were alleged to have been committed because the court injected a geographic bias against him and because he could not determine whether the jury represented a fair cross section of the surrounding community. U.S. Const. amend. VI, XIV; *see also* Me. Const. art. I, § 6; *Taylor v. Louisiana*, 419 U.S. 522, 526 (1975); *Holland*, 2009 ME 72, ¶ 22, 976 A.2d 227.

[¶16]   Townes first argues that he was deprived of his right to an impartial jury when the court introduced his attorneys to the jury pool as being "from Portland" because that information "created an immediate divide

between the jurors, drawn from the local area [Kennebec County] and the defense, which was from 'away.'" As the trial court correctly noted, the purpose of identifying attorneys at the outset of the jury selection process is to "allow the jurors to know who the attorneys were and to be able to tell [the court] if they knew the attorneys." The First Circuit has characterized inquiries into whether any juror knows an attorney or witness as "stock questions," suggesting that disclosure of such information is routine and to be expected at any jury trial. *Jewell v. Arctic Enters., Inc.*, 801 F.2d 11, 12 (1st Cir. 1986) (per curiam); *see also United States v. Gordon*, 634 F.2d 639, 641 (1st Cir. 1980) (rejecting defendant's specific voir dire questions but relying instead on "general questioning" to determine whether jurors knew the parties or the attorneys). We conclude that the court did not prejudice the jury against Townes when it identified his attorneys and stated that they were from Portland.[4]

[¶17]  Second, Townes argues that he was effectively precluded from making a meaningful inquiry into whether the jury venire was comprised of a fair and reasonable cross section of the community. The Sixth Amendment guarantees every criminal defendant the absolute right to a fair trial by an

---

[4] We also reject the notion that being "from Portland" creates a basis for prejudice.

impartial jury. In order to ensure that defendants have the opportunity to exercise this inviolable constitutional right, courts are charged with assembling a pool of prospective jurors from the surrounding community who are then selected and empaneled to hear the evidence and cast judgment on cases pending before the court.[5] The United States Supreme Court has "unambiguously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community . . . [and] that the jury be a body truly representative of the community." *Taylor*, 419 U.S. at 527 (quotation marks omitted) (citation omitted). Fair cross-sectional representation does not require that the jury ultimately chosen "mirror" the community, nor does it entitle a defendant to a jury of "any particular [racial] composition . . . ." *Id*. at 538. Rather, jury venires "must not systematically

---

[5] We underscore the enduring importance of jury service in the criminal justice system.

> Jury service is an important civic duty, and a valuable and basic right in our justice system. It guarantees citizen participation at a critical point in our government structure, assuring that people accused of crime will be judged by impartial, disinterested citizens from the community, not some specially selected groups of permanent employees.

*State v. Chambers*, CR-83-440-A, 1983 Me. Super. LEXIS 157, at *6 (Sept. 2, 1983). Thus, the unexcused failure of any citizen to appear for jury service when called is not only a failure of that citizen to perform a civic duty, it is a threat to the ability of our courts to ensure that the accused receive all of their constitutional rights. *Id*. For example, in *Holland*, although not every nonappearance was unexcused, of the 151 community members summonsed to report for jury selection, only eighty-one people, or about fifty-four percent, appeared. 2009 ME 72, ¶ 14, 976 A.2d 227.

10

exclude distinctive groups in the community and thereby fail to be reasonably representative" of the community. *Id.*

[¶18]   To establish a prima facie case that the jury selection process violates the Sixth Amendment's requirement for a fair cross section, a defendant must show

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in jury venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).   There are various ways of measuring underrepresentation.[6]   We have followed *Duren* and applied the "absolute disparity" test, which measures the difference between the percentage of members of the distinctive group in the community and the percentage of group members on the jury venire.[7]   *See Holland*, 2009 ME 72, ¶ 30, 976 A.2d 227; *Duren*, 439 U.S. at 365-66.

---

[6]  Townes identifies the inherent difficulty of establishing an "absolute disparity" between a jury venire and a community that is overwhelmingly racially homogeneous, but does not advocate for another viable method.  Other courts have applied different methods, such as the "absolute numbers" test, *see United States v. Biaggi*, 909 F.2d 662, 678 (2d Cir. 1990), and the "comparative disparity" test, which the First Circuit has repeatedly rejected, *see United States v. Royal*, 174 F.3d 1, 7-8 (1st Cir. 1999), but Townes has presented no compelling reason for us to deviate from the absolute-disparity test that we applied in *Holland*, and we decline to do so here.  *Holland*, 2009 ME 72, ¶¶ 29-30, 976 A.2d 227.

[7]  Some courts that have adopted the absolute-disparity test have gone further to hold that a racial disparity of less than ten percent is per se insufficient to demonstrate underrepresentation.

[¶19]   In *Holland*, the defendant, who identified as African-American, challenged the racial composition of the jury pool and requested a change in venue from York County to Androscoggin County, where 0.7 percent of the population was African-American, 2009 ME 72, ¶¶ 7, 15, 976 A.2d 227, the same percentage as in Kennebec County in this case.   We rejected Holland's claim because a racial disparity of 0.7 percent—the difference between the percentage of African-Americans residing in Androscoggin County (0.7) and the percentage of African-Americans on the jury venire (zero)—was not sufficient to show racial underrepresentation.   *Id*. ¶ 31.   We also noted that, even if Holland could show a disparity, he did not demonstrate that the underrepresentation on the venire was a result of the "systematic exclusion" of African-Americans in the jury-selection process.   *Id*. ¶¶ 32, 34; *see Duren*, 439 U.S. at 366.   We are not persuaded on this record to depart from our reasoning in *Holland*.

[¶20]   Here, Townes similarly presented no evidence of a "systematic exclusion" and failed to carry his burden of showing that the representation of

---

*Id.* (listing circuit courts that have adopted the ten-percent threshold).   Although Townes argued in his brief that he "could never have come close" to meeting this ten-percent threshold, the trial court did not apply that requirement, we expressly declined to adopt the ten-percent statistical threshold in *Holland*, *id.* ¶ 31, and we do not reconsider that issue on the facts of this case.

African-Americans on the jury venire was not fair and reasonable in relation to the number of African-Americans in the community. *Holland*, 2009 ME 72, ¶ 31, 976 A.2d 227. To the extent that Townes argues that the court erred in denying his motion for a new jury venire to be assembled, the prospective jurors he sought would have been drawn from the same community that is home to the same low percentage of African-Americans as the first venire.[8]

[¶21]  Because his argument fails to satisfy at least one element of the *Duren* test, 439 U.S. at 364-66, Townes fails to establish a prima facie violation of the Sixth Amendment's fair-cross-section requirement. Accordingly, the trial court did not err in denying his motion for a new jury. *Holland*, 2009 ME 72, ¶ 40, 976 A.2d 227.

The entry is:

> Judgment affirmed.

---

Marina L. Sideris, Esq. (orally), Camden, for appellant Terrence N. Townes

Maeghan Maloney, District Attorney, and Tyler J. LeClair, Asst. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2016-2691

---

8  Although Townes filed a motion to change venue, he withdrew that motion on September 28, 2017.