MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 35
Docket:      Yor-19-214
Argued:      February 12, 2020
Decided:     March 19, 2020

Panel:       SAUFLEY, C.J., and MEAD, GORMAN,* JABAR, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## FRANK C. SHOLES

MEAD, J.

[¶1]  Frank C. Sholes appeals from a judgment of conviction for unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(B) (2018), and domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2018), entered in the trial court (York County, *Douglas, J.*), following a jury trial and after the court denied Sholes's motion for a new trial, *see* M.R.U. Crim. P. 33.  Sholes argues that (1) the prosecutor committed multiple instances of misconduct and (2) the trial court abused its discretion in denying Sholes the opportunity to call the victim witness advocate to testify.  We affirm the judgment.

---

*  Although not available at oral argument, Justice Gorman participated in the development of this opinion.  *See* M.R. App. P. 12(a)(2) ("A qualified justice may participate in a decision even though not present at oral argument.").

## I. BACKGROUND

[¶2]  We view the evidence, which supports the jury's verdict, in the light most favorable to the State.  *See State v. Daluz*, 2016 ME 102, ¶ 2, 143 A.3d 800; *State v. Dolloff*, 2012 ME 130, ¶ 3, 58 A.3d 1032.

[¶3]  For approximately twelve years, Sholes and the victim were in a romantic relationship.  The couple lived together toward the end of their relationship, first in a rental property and then in a house that the victim purchased.  Sholes moved out of the house in March 2017.  After that time, the couple were no longer romantically involved but remained in communication because Sholes wanted to maintain contact with the victim's daughter, whom he had helped raise.  On July 28, 2017, Sholes entered the victim's house while the victim was home preparing to exercise.  The victim asked Sholes to leave, but Sholes wanted to "talk."  Sholes proceeded to force the victim to engage in sexual activities, despite her telling him to stop numerous times.

[¶4]  On October 3, 2017, Sholes was indicted on four charges: gross sexual assault (Class A), 17-A M.R.S. § 253(1)(A) (2018); aggravated criminal trespass (Class C), 17-A M.R.S. § 402-A(1)(A) (2018); unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(B); and domestic violence assault (Class D),

17-A M.R.S. § 207-A(1)(A). Sholes entered a plea of not guilty to each of the four charges.

[¶5]  The trial court held a two-day jury trial on February 27 and 28, 2019.  The jury found Sholes guilty of unlawful sexual contact and domestic violence assault, and not guilty of gross sexual assault and aggravated criminal trespass.

[¶6]  Sholes filed a timely motion for a new trial, *see* M.R.U. Crim. P. 33, on the same bases that he argues on appeal: (1) that the prosecutor committed misconduct when he used the word "rape" during closing argument and when he made statements about the victim's cell phone that he knew were not true, and (2) that the court should have allowed Sholes to call the victim witness advocate (VWA) to impeach the victim's credibility.  Following a hearing, the court denied Sholes's motion.

[¶7]  The court entered a judgment of conviction and sentenced Sholes to two years and six months in prison, with all but six months suspended, and two years of probation.  Sholes timely appealed.  *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

A.     Prosecutorial Misconduct

[¶8]  We "review the denial of a motion for a new trial for clear error or an abuse of discretion."  *State v. Robinson*, 2016 ME 24, ¶ 24, 134 A.3d 828 (quotation marks omitted).   In analyzing allegations of prosecutorial misconduct, we have repeatedly recognized the prosecutor's special role and accompanying responsibilities.  *See id.* ¶ 23.

[¶9]    When a defendant asserts that the prosecutor committed misconduct, we first determine whether misconduct in fact occurred.  *See State v. Clark*, 2008 ME 136, ¶ 7, 954 A.2d 1066.  If misconduct occurred, we review the prosecutor's statements for either harmless or obvious error, depending on whether the defense objected to the statements at trial.  *See id.; see also Dolloff*, 2012 ME 130, ¶¶ 31-39, 58 A.3d 1032 (explaining the harmless error and obvious error standards in the prosecutorial misconduct context).  Finally, we consider whether "[m]ultiple incidents of prosecutorial misconduct, none of which individually would require reversal, taken together . . . have a cumulative effect of violating a defendant's right to a fair trial."  *Dolloff*, 2012 ME 130, ¶ 74, 58 A.3d 1032 (quotation marks omitted).

1.      The Prosecutor's Use of the Word "Rape"

[¶10] Sholes contends that the prosecutor's use of the word "rape" in his closing rebuttal argument amounts to misconduct because it was "purposefully aimed at inciting the jury's emotions." In order to analyze this challenge, it is important to consider the alleged misconduct in the context of the entire trial.

[¶11] In his opening statement, the prosecutor said, "Mr. Sholes the defendant . . . enters the house without [the victim's] permission and rapes her. That's gross sexual assault." Sholes objected on the grounds that the term was inappropriate and designed to incite the jury's emotions. The court issued a curative instruction to the jury that it was to "disregard any reference to [the word 'rape'] . . . as presented in the opening statement by counsel."

[¶12] Throughout the trial, the victim and a law enforcement witness used the word "rape," eliciting no objection from the defense. In the State's closing arguments, the prosecutor uttered the word on two occasions. First, in his initial closing argument he used the word "rape" in reference to a rape kit, quickly adding "excuse me, your sexual assault kit." The defense did not object to this mention of the word. Later, in his rebuttal argument, the prosecutor said, "The blanket statement was made that memory fades over time. We all know that. Being forcibly raped in your house—," at which time the defense

6

objected, and the prosecutor corrected himself, "forcibly assaulted in your house." It is this final use of the word "rape" that Sholes challenges on appeal.

[¶13]  We are not persuaded by Sholes's assertion that "rape" is more inflammatory than "gross sexual assault" and therefore prejudicial, nor do we accept Sholes's unfounded accusation that the prosecutor's use of the word was intentional.[1]  The prosecutor's use of the phrase "forcibly raped" therefore did not constitute misconduct.  Thus, there is no error for us to analyze under the harmless error standard.  *See id.* ¶¶ 32-34; *State v. Gould*, 2012 ME 60, ¶ 21, 43 A.3d 952.

2.      The Prosecutor's Comments Regarding the Victim's Cell Phone

[¶14]  Sholes asserts that a second instance of prosecutorial misconduct occurred when the prosecutor invited the jury to make an inference about the police department's handling of the victim's cell phone.

---

[1]  Sholes's contention—that the court erred in finding that the prosecutor's use of the word "rape" during closing arguments was "ostensibly by inadvertence"—has two components, neither of which is availing.  First, Sholes argues that the prosecutor's statement at sidebar following the objection during the prosecutor's opening statement suggests that the prosecutor intended to repeat the word *after* opening arguments.  The prosecutor said, "I guess, as a middle ground, I'm fine with not using that term again in my opening statement."  This statement, standing alone, does not demonstrate that the prosecutor's two later mentions were intentional.  Second, Sholes asserts that the prosecutor "did not exhibit the same slips of the tongue in chambers, when he was careful to use the term 'sexual assault' as opposed to 'rape,'" insinuating a strategy on the prosecutor's part to hide the term "rape" from the court but employ the word before the jury.  In fact, the prosecutor used the term "rape" in chambers on one occasion and used the phrase "sexual assault" before the jury on multiple occasions.

[¶15]   Two pieces of digital evidence, which both the defense and prosecution had, were retrieved from the victim's cell phone: (1) an audio recording of the victim's interview with the lead detective, recorded at the hospital, and (2) a video recording made while the victim was holding her cell phone and talking to Sholes.  The latter was not admitted in evidence and was not disclosed to the jury.

[¶16]  During her testimony, the victim said that she dropped her phone off at the police station sometime after her hospital exam.  The victim also referenced text messages that were not in evidence, including stating that Sholes had texted her offering her $600 in exchange for sex.

[¶17]  The alleged instance of prosecutorial misconduct occurred during the prosecutor's rebuttal closing argument.  The defense asserted in its closing argument:

> [The victim] said [Sholes] texted her about this sex for money and she provided that.  I think she provided her phone to the detective in the case.  Do we have a copy of any text that said he was asking for sex for money?  No.  There is no evidence like that in this case.
>
> . . . .
>
> You can consider whether a witness's story was corroborated or contradicted by the testimony of another witness or exhibit.  Was there a witness or exhibit that corroborated any of that stuff?  Was there a picture?  Was there a photo?  Was there a text?  We live in a modern era, have stuff on phones.  Pictures are on everybody's

phones. Any of that presented in this case? Did anything corroborate her story?

[¶18] In rebuttal, the prosecutor said:

This whole idea that because the police department didn't collect the evidence she says she had, that that somehow reflects on [the victim]. She gave [the lead detective] the phone. You could make the reasonable inference [the lead detective] did not take that information off the phone. That's a reasonable conclusion from that. That doesn't mean [the victim] didn't give him the phone and say take whatever you want to take, which is what she told you. You can't blame [the victim] for the police department not taking evidence off the phone after he interviewed her. If it's there—

At this point the defense objected and a heated sidebar discussion ensued. During sidebar, the defense, referencing a pre-trial exchange with the prosecutor, argued that the prosecutor knew that his statement that the police did not collect the evidence was false, and the prosecutor disagreed. The court noted Sholes's objection and overruled it.

[¶19] There was no record evidence from the *police department* to prove that the police received the phone at the station;[2] what was presented, as the court noted, was the *victim's* testimony that she gave the police the phone.

---

[2] As the trial court observed, there was no "written report of the forensic evaluation of the phone," as "would have been (or should have been) generated as a matter of course." As the court noted, it is both "troubling that this [report] may not have been done," and "troubling that counsel did not attend to this issue before the morning of trial. The State should have made further inquiry well before then to determine the existence or non-existence of a report and confirm the state of the evidence. Defense counsel also should have followed up well before day one of the trial." Although concerning, the lack of trial preparation by trial counsel (who were not counsel on this appeal) does not resolve the matter at issue here, which is prosecutorial misconduct.

Additionally, no evidence was presented that would establish whether the recordings that were taken from the victim's phone were removed during the hospital interview or at a later date. Based on the evidence in the record, it was not improper for the prosecutor to suggest to the jury that it could infer that the text messages the victim referenced may have existed but that they had not been retrieved by law enforcement officers. *See State v. Gould*, 2012 ME 60, ¶¶ 19-21, 43 A.3d 952.

[¶20] We consider the prosecutor's statement in the "overall context of the trial," *Dolloff*, 2012 ME 130, ¶ 44, 58 A.3d 1032, and note that, like with the prosecutor's use of the word "rape," his statement about the cell phone was made during the State's rebuttal argument. The court repeatedly instructed the jury that statements made by the attorneys in closing arguments are not evidence. *See id.* ¶ 72 ("We presume that a jury follows a curative instruction unless there are exceptionally prejudicial circumstances or prosecutorial bad faith." (quotation marks omitted)). Given this instruction, even if we assume that the prosecutor's statement was improper, it does not amount to harmful error. *See id.* ¶¶ 32-34; *State v. Clarke*, 1999 ME 141, ¶ 24, 738 A.2d 1233.

[¶21] In addition, the prosecutor's comment was in response to the defense attorney's attempts during closing argument to discredit the victim's

credibility based on the lack of evidence from her phone. We have held that when the prosecutor's comment was "invited" by the defendant, the comment will not "warrant reversing a conviction" if the prosecutor "did no more than respond substantially in order to right the scale." *Dolloff*, 2012 ME 130, ¶ 64, 58 A.3d 1032 (quotation marks omitted); *see id.* ¶ 44 (citing *United States v. Mejia-Lozano*, 829 F.2d 268, 274 (1st Cir. 1987) ("[T]he prosecutor is given somewhat greater leeway in rebuttal to rehabilitate his witnesses in response to defense counsel's inflammatory statements." (quotation marks omitted))).

[¶22] Finally, the defense attorney made no request of the court for a specific instruction or other remedy following his objection. Contrary to Sholes's contention that the "trial court failed to afford the defense a remedy," it was the attorney's responsibility to request a form of relief, which he failed to do, *see Daluz*, 2016 ME 102, ¶ 49, 143 A.3d 800, and in any event the court issued broad curative instructions regarding closing arguments, as described above. Again, any error arising from the prosecutor's remarks regarding the victim's cell phone was harmless. *See Dolloff*, 2012 ME 130, ¶¶ 32-34, 58 A.3d 1032.

### 3. Cumulative Effect of Prosecutorial Misconduct

[¶23] Finally, we review Sholes's alleged instances of misconduct "cumulatively and in context to determine whether [he] received an unfair trial that deprived [him] of due process." *Id.* ¶ 74; *see* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A. Because neither allegation amounted to misconduct, the comments did not deprive Sholes of a fair trial when considered in the aggregate. *See Daluz*, 2016 ME 102, ¶¶ 67-68, 143 A.3d 800. We therefore conclude that the trial court did not abuse its discretion when it denied Sholes's motion for a new trial. *See id.* ¶¶ 68-69.

## B. Evidentiary Challenge

[¶24] Sholes argues that the court abused its discretion in denying him the opportunity to call as a witness the district attorney's VWA. *See Dolloff*, 2012 ME 130, ¶ 24, 58 A.3d 1032.

[¶25] The victim's description of the incident during her direct testimony included six facts that Sholes asserts she had not disclosed previously.[3] Sholes's attorney questioned the victim and law enforcement officers about whether the

---

[3] The six previously undisclosed facts were (1) that Sholes held her down by kneeling on one leg and holding down the other; (2) that he picked up an exercise bar from the ground and threatened her with it; (3) that she attempted to make a 911 call on her Alexa device; (4) that he forced her head back; (5) that she tried to push him off of her; and (6) that when Sholes was leaving, he told her that she should have taken the $600, referencing a prior text message exchange.

12

victim had told law enforcement or the hospital nurse the six facts. For the most part, the victim did not recall whether she had shared the facts with law enforcement.[4] The State made an offer of proof that if the VWA were to testify, she would say that she did not recall the victim telling her any of the six previously undisclosed facts.[5]

[¶26] Sholes's attorney sought to call the VWA to testify in order to impeach the victim through prior inconsistent statements and to challenge the victim's "recall and credibility." It is this latter contention that Sholes focuses on in this appeal. In particular, he argues that the court improperly limited its evidentiary analysis to whether the VWA's testimony could establish that the victim made *prior inconsistent statements*, thereby preventing Sholes from impeaching the victim's *credibility*. We disagree.

---

[4] In the hospital following the incident, the lead detective, who was not called to testify, recorded an interview with the victim, which the victim listened to in preparation for trial. When cross-examined about five of the six facts, the victim testified that she did not mention four of the facts in the recorded interview and could not remember whether she had mentioned the fifth. Regarding what she told other law enforcement officers or the nurse immediately following the incident, the victim could not recall whether she had shared three of the facts and thought that she had disclosed a fourth. On cross-examination of the two law enforcement officers, when Sholes's attorney asked about some of the previously unmentioned facts, both the patrol officer and detective sergeant responded definitively that the victim had not told them about those facts in their discussions with her following the incident.

[5] We reject Sholes's contention that the court abused its discretion in relying on the State's offer of proof regarding what the VWA's testimony would be. Although the record reflects that the VWA had not reviewed her notes before trial, the prosecutor asserted that he had reviewed the notes.

[¶27]  The court addressed the issue of the victim's memory in its ruling. In excluding the VWA as a witness, the court stated,

> Mr. Gordon, I've heard the argument, I understand the argument. The request is denied.  You effectively established on cross-examination that the witness gave a number—made a number of inconsistent statements and had a *lapse of memory*.  All of that is fair game for you to argue to the jury consistent with the Court's instructions.

(Emphasis added.)  The court emphasized that the defense had conducted ample cross-examination regarding the previously undisclosed facts.  In doing so, the court reasoned that further testimony regarding the victim's memory would be cumulative.  *See* M.R. Evid. 403.  Contrary to Sholes's assertion, the court did not abuse its discretion in denying his request that the VWA testify.[6]

The entry is:

Judgment affirmed.

---

[6]  Sholes additionally suggests that the court should have ordered disclosure of the VWA's notes, which constitute privileged communications, on the basis that the trial court has the ability to determine that disclosure of privileged victim advocate information is "necessary to the proper administration of justice."  16 M.R.S. § 53-C(3)(C) (2018); *see* 17-A M.R.S. § 1177(3) (2018) (section 1177 has since been repealed and replaced; *see* P.L. 2019, ch. 113, §§ A-1, A-2 (effective Sept. 19, 2019) (to be codified at 17-A M.R.S. § 2109(3))).  The court was aware of its discretionary authority to overcome the statutory privilege afforded victim advocate communications and did not abuse its discretion when it refused to order disclosure of the notes.

Patrick H. Gordon, Esq., and Joshua T. Avery, Esq. (orally), Fairfield and Associates, P.A., Lyman, for appellant Frank C. Sholes

Kathryn Loftus Slattery, District Attorney, and Lauren K. Daley, Asst. Dist. Atty. (orally), Prosecutorial District 1, Alfred, for appellee State of Maine

York County Unified Criminal Docket docket number CR-2017-592
FOR CLERK REFERENCE ONLY