MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:    2020 ME 56
Docket:      Cum-19-285
Argued:      March 4, 2020
Decided:     May 5, 2020

Panel:       MEAD, GORMAN, JABAR, HORTON, and CONNORS, JJ.*

STATE OF MAINE

v.

DAVID MULLEN

CONNORS, J.

[¶1]  David Mullen appeals from a judgment of conviction for reckless conduct (Class C), 17-A M.R.S. § 211(1) (2018), and aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A) (2018), entered in the trial court (Cumberland County, *Cole, C.J.*) after a jury-waived trial.  Mullen argues that the court abused its discretion by denying his motion to suppress his personal medical records as a sanction for the State's late seizure of the records.  The State purports to cross-appeal, challenging the legality of the court's probation condition referring Mullen to drug court.

---

* Although Chief Justice Saufley participated in the appeal, she resigned before this opinion was certified.

[¶2]  The primary issue at trial was whether Mullen was suffering from a mental condition that prevented him from forming the necessary culpable mental state for conviction.  Although the State's dilatory acquisition of Mullen's medical records undermined the purpose of the dispositional conference provided for by Maine Rule of Unified Criminal Procedure 18(b), we affirm Mullen's conviction because the court did not abuse its discretion by offering Mullen a continuance of the trial in lieu of excluding his medical records.  We do not reach the State's challenge to the legality of the probation condition because the State failed to file a notice of appeal and provide the written authorization of the Attorney General.  *See* 15 M.R.S. § 2115-A(3), (5) (2018); M.R. App. P. 2A(f)(2), 21(a)-(c).

## I.  BACKGROUND

[¶3]  The following facts found by the trial court are supported by competent evidence in the record.  *State v. Asaad*, 2020 ME 11, ¶ 2, 224 A.3d 596. On July 1, 2018, Mullen stood shirtless in the median of I-95 in Scarborough, throwing rock-like objects at passing vehicles.  He hit at least two vehicles.  The drivers of the damaged vehicles pulled over to wait for the police to arrive.

[¶4] After striking the windshield of one of the vehicles, Mullen began to jog toward the vehicle. The car's driver exited the vehicle to intercept him, grabbed his arm, and pinned him to the ground until police arrived.

[¶5] Both drivers noted Mullen's angry, unpredictable, and aggressive demeanor. The first police officer to arrive at the scene testified that Mullen appeared to be under the influence of drugs; that Mullen had said he had taken ecstasy; and that, in the officer's view, Mullen was exhibiting "excited delirium," an altered mental state characterized by confusion, disorientation, agitation, and paranoia.

[¶6] Once emergency personnel arrived, Mullen was transported to Maine Medical Center (MMC) for examination. The emergency medical technician who treated Mullen at the scene and transported him testified that Mullen appeared afraid and remorseful, and he didn't remember where he was. The technician also testified that Mullen had said that he had recently taken and was currently under the influence of several illegal drugs. In the technician's opinion, Mullen was not exhibiting signs of excited delirium.

[¶7] Mullen was charged by complaint in August 2018, and an indictment was issued in October 2018, charging Mullen with reckless conduct with a

dangerous weapon (Class C), 17-A M.R.S. §§ 211(1), 1252(4) (2018),[1] and aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A). Mullen pleaded not guilty to all charges.

[¶8] Prior to trial, the court held three dispositional conferences. During the first dispositional conference, in December 2018, the court ordered Mullen to undergo a mental examination conducted by the State Forensic Service to determine his mental state at the time of the incident. The second dispositional conference took place in February 2019; at that conference, the parties agreed to continue the conference because the mental evaluation had not yet been completed.

[¶9] On March 15, 2019, the evaluation was filed by the State Forensic Service. The evaluating psychologist concluded, consistent with the police officer's opinion but contrary to the opinion of the emergency medical technician, that Mullen's actions on the day of the incident were consistent with excited delirium. The State forensic psychologist opined that the "delirium interfered with [Mullen's] capacity to perceive his environment" and that his

---

[1] Title 17-A M.R.S. § 1252 (2018) has since been repealed as part of the recodification and revision to Title 17-A's sentencing provisions. *See* P.L. 2019, ch. 113, § A-1 (emergency, effective May 16, 2019). This citation is to the statute "in effect at the time of the offense." *State v. Sweeney*, 2019 ME 164, ¶ 8 n.2, 221 A.3d 130.

"capacity to formulate a plan or act in a goal-directed manner was extremely impaired." For reasons that are not clear from the record, the evaluating psychologist did not review the records from Mullen's July 1, 2018, admission to MMC before issuing his report.[2]

[¶10] Upon receiving the mental evaluation in late March 2019, the State determined that it needed to obtain Mullen's July 1, 2018, MMC records to prove that Mullen had the requisite mens rea to commit the crimes charged and was not exhibiting the symptoms of excited delirium. The State, however, did not discuss the MMC records during the April dispositional conference, did not seek to obtain those records prior to the April conference, and did not tell counsel for Mullen that it would be seeking those records.

[¶11] Not until May 13, 2019, a week before trial, did the State seek and obtain a search warrant from the District Court (*Kelly, J.*) for the records from MMC. The State received the records the next day and immediately provided them to Mullen but did not provide Mullen with a copy of the search warrant and supporting affidavit until the day before trial.

---

[2] Although the order signed on December 4, 2018 allowed the State Forensic Service to obtain the records and provide them to the evaluating psychologist, at oral argument it became clear that neither the defendant nor the State provided those records to the evaluating psychologist.

[¶12]  The MMC records indicated that the primary reason for Mullen's hospitalization was likely due to "intoxication" from taking drugs, as opposed to an abnormal mental condition.  The records also indicated that Mullen exhibited "a normal mood and affect" during his time at the hospital, and there was "no suggestion of instability."

[¶13]  The court (*Cole, C.J.*) held a bench trial on May 20, 2019.  Before the start of the trial, Mullen's counsel objected to the admission of his MMC records:

> . . . [T]he State[] had months to get those records.  All of a sudden, I have—I would have had a reason to review the affidavit, review the four corners of the warrant, potentially file briefs challenging the affidavit and/or the warrant.  I shouldn't have to be literally reviewing this stuff on the eve of trial.

[¶14]  In the colloquy with counsel on the motion, the court noted that the State's conduct appeared to defeat the purpose of the dispositional conference.  The State agreed, but suggested that one possible sanction instead of exclusion of the records would be a continuance, given, among other reasons, that the records were the defendant's own and thus had always been accessible to him.  The court asked defense counsel what actual prejudice had been caused by the State's conduct, to which defense counsel responded:

> I reviewed the medical records.  I don't think there is much there more than what he told the EMT fellow, which is that . . . he had been taking polysubstances.  So, again, I haven't scrutinized them to see to what degree.  I think there is a little additional weight

> because he is telling a—ER staff as opposed to the paramedic. But it's not—as far as I could tell, it's not a complete bombshell. I think there is some consistency there with what he told the paramedics.

The court's offer of a continuance was declined, and the trial proceeded as scheduled.

[¶15] At trial, the State forensic psychologist testified about the mental evaluation. He reiterated that Mullen's behavior on the day of the incident was characteristic of "excited delirium" because Mullen was agitated, sweating profusely, and needed to be restrained. To inform his opinion, the psychologist relied on the EMS reports, police records, a letter from Mullen's physician, and his interview with Mullen. The psychologist, however, did not review the MMC records before preparing his report or at any time prior to trial.

[¶16] On cross-examination, after being asked about the MMC records, the psychologist substantially backtracked on his opinion, conceding that it was possible that Mullen's actions were instead due to a "drug-induced delirium" because Mullen had taken a number of drugs prior to the incident. He also acknowledged that Mullen had the ability to "engage in purposeful and goal-oriented behavior" because he was able to drive his car safely to the center median, he was aware of the risk of death due to the highway traffic, and he knew that he was throwing rocks at cars.

[¶17]  The court found Mullen guilty on the two charges.  It found, based on the statements of medical professionals and Mullen's own statements made during the incident, that Mullen was suffering from a "drug-induced delirium," and not excited delirium, on the day of the incident.  The court further found that Mullen made "rational decisions" during the course of the incident, evidenced by the fact that he did not step into highway traffic.  The court concluded that Mullen possessed the requisite mens rea of recklessness for the crimes charged.

[¶18]  At a sentencing hearing in July 2019, the court sentenced Mullen to four years' incarceration with all but four months suspended and two years of probation.  The court also ordered Mullen, as a condition of his probation, to apply for drug court.  Mullen timely appealed.  *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

### A.    Violation of the Maine Rules of Unified Criminal Procedure

[¶19]  Mullen argues that the court abused its discretion by denying his motion to suppress the MMC records as a sanction for the State's violation of Maine Rule of Unified Criminal Procedure 18(b).[3]  We agree that the State's

---

[3] While Mullen suggests that the disruption caused by the State's late acquisition of the records implicates the processes contemplated in other Maine Rules of Unified Criminal Procedure, such as

9

conduct undermined the purpose of the rule.  But we conclude that the court's offer of a continuance in lieu of exclusion of the evidence fell within the court's broad discretion in devising an appropriate response to the State's conduct.

[¶20]  Pursuant to M.R.U. Crim. P. 18(b), "[c]ounsel and unrepresented defendants must be prepared to engage in meaningful discussion regarding all aspects of the case with a view toward reaching an appropriate resolution." Here, despite knowing that Mullen's mental state was going to play a central role at trial, the State waited until shortly before trial to attempt to obtain records that were likely to be highly relevant to the issue of Mullen's mens rea. As a result of that delay, neither Mullen nor the court was aware that the psychological evaluation discussed at the last dispositional conference was likely to be undermined at trial.  Thus, the State's delay here undermined the purpose of, and thus violated, Rule 18(b).

B.     Sanctions

[¶21]  A court has broad discretion in deciding what sanction, if any, is appropriate when the State violates a rule of criminal procedure.  *See State v. Townes*, 2019 ME 81, ¶ 13, 208 A.3d 774.  We review a court's determination

---

Rule 12(b)(3)(A) and Rule 41A, we conclude that Rule 18(b) is most directly implicated by the State's conduct.

for an abuse of discretion. *Id.* "We will not characterize a trial court's decision not to impose [a certain] sanction[] as an abuse of discretion or an error of law unless the defendant has shown that he was in fact prejudiced by the . . . violation and that the prejudice rose to the level of depriving him of a fair trial." *State v. Gould*, 2012 ME 60, ¶ 24, 43 A.3d 952 (alteration omitted) (quotation marks omitted). "When a defendant contends that a . . . violation and the court's response to it violated his or her right to a fair trial, we review the trial court's procedural rulings to determine whether the process struck a balance between competing concerns that was fundamentally fair." *State v. Poulin*, 2016 ME 110, ¶ 28, 144 A.3d 574 (quotation marks omitted).

[¶22]  Here, the MMC records were important to the State's case, primarily to question the conclusion of the psychologist who provided the mental evaluation.  But Mullen did not articulate any prejudice caused by the State's violation that could not have been addressed by a continuance.  The court did not indicate that a continuance would lead to a long delay.  Mullen was not incarcerated at the time of the trial and had minimal pretrial conditions imposed upon him.  There is no suggestion that the search warrant was defective in any respect.  Finally, and importantly, Mullen always had access to the MMC records because they were under his control as the patient.  The court,

therefore, did not violate Mullen's right to a fair trial in offering a continuance instead of excluding the medical records. *See Townes*, 2019 ME 81, ¶ 14, 208 A.3d 774; *Poulin*, 2016 ME 110, ¶ 34, 144 A.3d 574.

## C.  Probation Condition

[¶23]  In its appellee's brief, the State asserts that it was unlawful for the court to impose a probation condition referring Mullen to an alcohol and drug treatment program without clearly defined and enforceable sentencing consequences based on his success or failure in the program.

[¶24]  In criminal matters, the State's right to appeal is limited. 15 M.R.S. § 2115-A (2018); *State v. Ouellette*, 2019 ME 75, ¶ 16, 208 A.3d 399. "[S]ection 2115-A identifies the circumstances in which the State is and is not required to file a notice of appeal and when it is required to obtain the Attorney General's authorization to commence an appeal." *Ouellette*, 2019 ME 75, ¶ 16, 208 A.3d 399; *see* 15 M.R.S. § 2115-A(1)-(3), (5).  Pursuant to section 2115-A(3), the State does not need to file an appeal or obtain authorization from the Attorney General when the defendant appeals from a judgment of conviction and the State alleges that an "error harmful to it was *committed prior to trial or in the trial . . . .*" (Emphasis added.)  In order for the State to assert errors in post-trial proceedings, however, "the State must file a notice of appeal and secure written

approval from the Attorney General." *Ouellette*, 2019 ME 75, ¶ 16, 208 A.3d 399; *see* 15 M.R.S. § 2115-A(5).

[¶25]  The State appeals from an alleged error that occurred during post-trial sentencing.  Therefore, it was required to file an appeal and obtain the written approval of the Attorney General.  *See* 15 M.R.S. § 2115-A(3), (5); *Ouellette*, 2019 ME 75, ¶ 17, 208 A.3d 399.  Because the State did neither, we do not reach the State's claim of error.  *See* M.R. App. P. 21(a)-(c).

The entry is:

Judgment affirmed.

Rory A. McNamara, Esq. (orally), Drake Law LLC, Berwick, for appellant David Mullen

Jonathan Sahrbeck, District Attorney, and Carlos Diaz, Asst. Dist. Atty. (orally), Cumberland County District Attorney's Office, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2018-4808
FOR CLERK REFERENCE ONLY