MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 52
Docket:        And-22-161
Submitted
  On Briefs:   June 21, 2023
Decided:       August 15, 2023

Panel:         MEAD, JABAR, HORTON, CONNORS, and DOUGLAS, JJ, CLIFFORD, A.R.J., and
               HUMPHREY, A.R.J.

STATE OF MAINE

v.

CALVIN A. FOOTMAN

MEAD, J.

[¶1]  Calvin A. Footman appeals from a judgment of conviction entered in the trial court (Androscoggin County, *Stewart, J.*), following a jury verdict of guilty on charges of domestic violence aggravated assault (Class B), 17-A M.R.S. § 208-D(1)(D) (2018),[1] and domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2018),[2] and the court's finding of guilty on a charge of violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2023).  Footman was sentenced to nine years' incarceration, with all but six years suspended,

---

[1] Title 17-A M.R.S. § 208-D has since been amended, though the amendment is not relevant to this appeal.  *See* P.L. 2021, ch. 647, § B-19 (effective Jan. 1, 2023) (codified at 17-A M.R.S. § 208-D (2023)).

[2] Title 17-A M.R.S. § 207-A has since been amended, though the amendment is not relevant to this appeal.  *See* P.L. 2021, ch. 647, § B-17 (effective Jan. 1, 2023) (codified at 17-A M.R.S. § 207-A (2023)).

followed by four years of probation. Footman contends that his right to a representative jury was violated when the court used the absolute disparity test to determine the racial makeup of the jury venire and that the court erred when it denied his motion to subpoena the grand jurors. We disagree and affirm the judgment of conviction.

## I. BACKGROUND

[¶2] The basic facts are not in dispute. "We view the evidence, which supports the jury's verdict, in the light most favorable to the State." *State v. Sholes*, 2020 ME 35, ¶ 2, 227 A.3d 1129.

[¶3] Footman, who is Native American and African American, and the victim began a romantic relationship in August 2019, and he moved into the victim's apartment within a few days. On October 31, 2019, Footman and the victim were involved in a heated argument that became physical. In the shared hallway of their apartment building, Footman choked the victim while her child was present. The altercation was interrupted by a witness who was recording them, at which point Footman pushed the victim against the apartment door and then grabbed her by the hood of her sweatshirt, pulling her back into the apartment. Police responded and the victim was taken to the hospital and

treated for her injuries. On January 6, 2020, Footman was indicted by an Androscoggin County grand jury.

[¶4] In May 2021, Footman filed a motion to dismiss based on the racial makeup of the grand jury pool. On July 2, 2021, Footman filed a motion to dismiss the indictment due to, he asserts, a lack of sufficient numbers of African American individuals in the Androscoggin County grand jury and petit jury pools to reflect a fair cross section of the community. Footman argued that minority residents are significantly underrepresented in the jury pool and that the source list results in systematic exclusion of poor and minority potential jurors. Footman asked the court to provide him with a list of the "June 2019 Grand Jury Pool" that indicted him. On July 26, 2021, Footman filed a motion to subpoena the grand jury pools "as witnesses from [the] June 2019 and November 2019 pools under Rule 17(c)."

[¶5] The court held a hearing on the motions on September 7, 2021.[3] The court (*Stewart, J.*) denied the motion to subpoena the grand jury members but offered to provide the juror list and the juror questionnaires, which would include the grand jurors' addresses. During the hearing on the motion to

---

[3] On December 21, 2020, the court (*Stanfill, J.*) granted Footman's motion to "represent [him]self in connection with co-counsel." During the motions hearing, Footman actively participated in the hearing along with counsel.

4

dismiss, the defense did not present any witnesses or exhibits and the parties stipulated to juror questionnaire data, census data, and American Community Survey data. The parties also stipulated to the process by which jurors are identified to be summonsed. The State presented expert testimony on statistical calculations based upon results from two tests commonly applied to racial data: the absolute disparity test and the comparative disparity test. On September 24, 2021, the court denied Footman's motion to dismiss and found that he failed to present a prima facia case that the jury selection process violated the Sixth Amendment's requirement of a fair cross section of the community in the grand jury because he failed to show a systematic exclusion of African Americans and Native Americans in the jury selection process. Relying on Maine case law, the court used the absolute disparity test to determine that the number of African American and Native American persons on the jury venire was fair and reasonable in relation to the number of African American and Native American persons in the community.

[¶6] Subsequently, Footman's counsel filed another motion to dismiss the indictment on the basis of an alleged "lack of a fair cross section of minority representation in the Androscoggin County jury pool." The motion largely mirrored Footman's assertions in the previous filing. Prior to a non-testimonial

hearing on the motion, the parties submitted a joint stipulation of facts that included stipulations to jury selection procedures, census data, jury data, and each party's applicable calculations. The parties also submitted competing reports of experts. Applying both federal and state law, and again relying on the absolute disparity test, the court denied Footman's motion to dismiss.

[¶7] The case proceeded to jury selection and a three-day trial. The jury found Footman guilty of domestic violence aggravated assault (Count 1) and domestic violence assault (Count 2). The court, by stipulation of the parties that it would decide the charge of violating a condition of release (Count 3), found Footman guilty on that count. Count 2 was merged into Count 1 and Footman was sentenced to nine years' imprisonment, with all but six years suspended, and six months to be served concurrently on Count 3. Footman timely appealed.[4]

## II. DISCUSSION

[¶8] Footman appeals the court's determination that the jury venire was a fair cross section of the community. He argues that the method used to

---

[4] With leave of the Court, Footman's appellate counsel withdrew from representation after the parties briefed the case. Footman personally, and not through counsel, filed a supplemental brief raising, in addition to the previously presented issues, arguments that as a "natural person" the court lacks personal jurisdiction over him. We reject his personal jurisdiction arguments as being unpreserved and without merit and do not discuss them further. *See MP Assocs. v. Liberty*, 2001 ME 22, ¶ 18, 771 A.2d 1040.

6

calculate racial disparity was unconstitutional and that we should adopt a different approach. Footman also argues the court erred when it denied his motion to subpoena the grand jury members. We address each issue in turn.

## A. Fair Cross Section of the Community

[¶9] Footman argues that the court erred in denying his motion to dismiss for lack of a fair cross section of the community in the jury venire and that the court's denial violated his federal constitutional rights.[5] Without providing an alternative, Footman asks us to abandon our longstanding approach for determining the constitutionality of a jury venire.

[¶10] After considering our precedents on what constitutes a fair cross section of the community in a jury venire, we now clarify that findings by a trial court on that issue are reviewed for clear error and its ultimate legal conclusion is reviewed for abuse of discretion. *See State v. White*, 2022 ME 54, ¶ 16 n.6, 285 A.3d 262.

[¶11] "The Sixth Amendment guarantees that 'in all criminal prosecutions, the accused shall enjoy the right to . . . trial, by an impartial jury

---

[5] Footman also argues the denial violated his state constitutional right to "a jury of the vicinity." Me. Const. art. I, § 6. He invites us to apply a separate analytical standard under the Maine Constitution, but he fails to develop that argument or suggest a possible alternative approach. We deem the argument, which is made for the first time on appeal, to be unpreserved and we do not address it further. *See State v. White*, 2022 ME 54, ¶ 31 n.13, 285 A.3d 262.

of the State and district wherein the crime shall have been committed.'" *State v. Thomas*, 2022 ME 27, ¶ 27, 274 A.3d 356 (quoting U.S. Const. amend. VI). "[The] jury must be drawn from a 'fair cross section of the community,' but a 'fair cross section' does not guarantee that juries be 'of any particular composition.'" *Id*. (quoting *Taylor v. Louisiana*, 419 U.S. 522, 527, 538 (1975)). "All that is required is that the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *State v. Holland*, 2009 ME 72, ¶ 22, 976 A.2d 227 (quotation marks omitted).

[¶12]  "To establish a prima facie claim that a jury selection process violates the constitutional requirement that the jury be selected from a pool representative of the community at large," we look to the test outlined in *Duren v. Missouri*, 439 U.S. 357 (1979). *Id*. ¶ 23.  In the *Duren* test, "the challenging party has the burden to show that: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in jury pools from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process." *Id.* (quotation marks omitted).  *See Duren v. Missouri*, 439 U.S. 357, 364 (1979).

8

### 1.  First *Duren* Element

[¶13]  "Certain groups—such as those defined by race or sex—are unquestionably distinctive."  *Thomas*, 2022 ME 27, ¶ 28, 274 A.3d 356 (quotation marks omitted).  The parties do not dispute that African Americans are a distinctive group for the purposes of this analysis, and therefore the first *Duren* element has been met.[6]

### 2.  Second *Duren* Element

[¶14]  We now turn to the second *Duren* element.  We have adopted the absolute disparity test[7] to "determine whether the distinctive group at issue was underrepresented in venire panels."  *Holland*, 2009 ME 72, ¶¶ 27, 30, 976 A.2d 227.  "The absolute disparity test measures the difference between the percentage of members of the distinctive group in the community and the percentage of group members on the jury wheel."[8]  *Id*. ¶ 28.

---

[6]  In Footman's July 2021 motion to dismiss, he asserted that both Native Americans and African Americans are underrepresented in the jury venire.  However, any reference to Native American underrepresentation was not included in subsequent filings or asserted on appeal.

[7]  Footman seemingly argues we should adopt the comparative disparity test.  The comparative disparity test "measures the diminished likelihood that members of an underrepresented group, when compared to the population as a whole, will be called for jury service" and "is calculated by dividing the absolute disparity percentage by the percentage of the group in the population." *United States v. Royal*, 174 F.3d 1, 7 (1st Cir. 1999) (quotation marks omitted).  We rejected the comparative disparity test in *State v. Holland* and decline Footman's invitation to reconsider that decision.  2009 ME 72, ¶¶ 27-30, 976 A.2d 227.

[8]  The absolute disparity test has also been applied by the United States Supreme Court and the First Circuit.  *See Duren v. Missouri*, 439 U.S. 357, 365-66 (1979); *Royal*, 174 F.3d 1, 6-7 (1st Cir. 1999).

[¶15]  The parties stipulated to the following facts, and the court adopted them in its findings: 250 prospective jurors were summonsed for March and April 2022; 190 of those protentional jurors responded to the questionnaire; 146 answered the race and/or ethnicity questions; and of the 146 answers, three identified as Black or African American.  The share of individuals in the jury pool that identified as Black or African American was therefore 2.05%.[9]

[¶16]  The parties disagree on how to calculate the racial makeup of Androscoggin County, which is necessary to determine potential underrepresentation.  Footman relies solely on U.S. Census data.  The State uses the American Community Survey (ACS), which is conducted by the U.S. Census Bureau and includes information related to citizenship and English-speaking ability.  Similar to our acknowledgement in *Holland*, the trial court here found that the State's population calculation using ACS data was more appropriate because using only census data may result in an over-calculation of the population of Black or African Americans who are jury eligible.[10]  *See Holland*,

---

[9]  It was Footman's position in the trial court that this was the applicable calculation of Black or African Americans in the March and April 2022 jury pool.  On appeal, Footman "takes issue with this finding" of the court.

[10]  To be considered jury eligible, a prospective juror must be a citizen of the United States and a resident of the county, be at least eighteen years of age, and be able to read, speak, and understand the English language.  14 M.R.S. § 1211 (2023).

2009 ME 72, ¶ 31 n.9, 976 A.2d 227 (acknowledging that using the whole population skews in the defendant's favor because it likely includes individuals not old enough to be jury eligible).

[¶17]   The trial court found, using the ACS data, that the share of Androscoggin's population that identifies as Black or African American as at least one race and is jury eligible is 3.06%, and the absolute disparity is 1.01% (calculated as 3.06% minus 2.05%).  According to the 2020 census data, those that are eighteen years or older and identify as Black or African American as at least one race constitutes 4.82% of the total population, and the absolute disparity is 2.77% (calculated as 4.82% minus 2.05%).  Using the ACS data, the trial court found the absolute disparity to be 1.01%.

[¶18] We have historically declined to adopt a statistical threshold which would be per se sufficient to demonstrate underrepresentation, *State v. Townes*, 2019 ME 81, ¶ 18 n.7, 208 A.3d 774, but in *Holland* we determined that "0.7 percent disparity between the percentage of members of the distinctive group in the community and the percentage of group members on the jury venire was insufficient to show underrepresentation," and we have "suggested that a three percent disparity would also be insufficient," *White*, 2022 ME 54, ¶ 18 n.8, 285 A.3d 262.  The trial court, therefore, appropriately determined the

1.01% absolute disparity in Footman's jury venire was insufficient to show underrepresentation.

### 3. Conclusion

[¶19] Because Footman fails on the second element of the *Duren* test, we do not reach the third element.[11] The court's factual findings on the second *Duren* element, reviewed for clear error, are amply supported by the record—the parties stipulated to the pertinent facts. And the court's ultimate conclusion, reviewed for abuse of discretion, is likewise supported.

## B. Motion to Subpoena Grand Jurors

[¶20] Footman also appeals from the court's denial of his motion to subpoena the grand jurors. Footman argues the denial blocked him from "any way to vindicate his right to a racially representative grand jury" and that the court's offer of the juror list and addresses was insufficient to determine the race and ethnicity of the jurors.

[¶21] We review a ruling concerning the need for a subpoena for an abuse of discretion. *State v. Marroquin-Aldana*, 2014 ME 47, ¶ 33, 89 A.3d 519. "On review after a hearing in which the court has stated its findings, and there

---

[11] The third element of the *Duren* test "requires the challenging party to show that underrepresentation of the distinctive group . . . occurred as a result of systematic exclusion from jury pools" and "[s]ystematic exclusion means exclusion inherent in the particular jury-selection process utilized." *Holland*, 2009 ME 72, ¶ 32, 976 A.2d 227 (quotation marks omitted).

has been no motion for further findings, we will infer that the court found all the necessary facts to support its judgment if those inferred findings are supportable by evidence in the record." *State v. Connor*, 2009 ME 91, ¶ 9, 977 A.2d 1003.

[¶22] The court denied Footman's motion because the grand jury term was over, and the panel had been excused. The court then offered Footman "the grand jury list, including the questionnaires that have their address[es]." The court did not issue written findings and neither party moved for further findings. On this record, there was no evidence contrary to the court's findings that the grand jury term was over and the panel had been excused, and therefore the court did not abuse its discretion in denying the motion to subpoena the grand jury.

[¶23] Footman argues that because he was a self-represented litigant, the court should have issued the subpoena because denying it "effectively denied [Footman] the opportunity to ensure his constitutional rights to a representative grand jury." However, the record shows that Footman was not solely self-represented. Rather, Footman acted as first chair in connection with counsel and counsel was very active throughout the litigation. During the motions hearing, Footman and his counsel participated when discussing issues

with the court. When the court addressed the subpoena, Footman was the only one that spoke, but counsel was present and actively engaged before and after the denial of the motion. There is nothing in the record to indicate why counsel did not issue a subpoena pursuant to M.R.U. Crim. P. 17(a).

[¶24] Even taking into consideration Footman's status as advocate with assigned counsel, the court did not abuse its discretion in denying the request for subpoenas.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq., Drake Law LLC, York, and Calvin A. Footman, pro se, for appellant Calvin A. Footman

Alexandra W. Winter, Acting District Attorney, and Katherine M. Hudson-MacRae, Asst. Dist. Atty., Prosecutorial District III, Lewiston, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2019-3358
FOR CLERKS REFERENCE ONLY