MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2015 ME 74
Docket:      SRP-11-616
Argued:      May 14, 2015
Decided:     June 16, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## STATE OF MAINE

v.

## DAUDOIT BUTSITSI

ALEXANDER, J.

[¶1]  Pursuant to 15 M.R.S. §§ 2151-2157 (2014), the Sentence Review Panel granted Daudoit Butsitsi's application to appeal his sentence of thirty-eight years of imprisonment, imposed pursuant to a judgment of conviction for intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2014), entered in the Unified Criminal Docket (Cumberland County, *Horton, J.*).  Butsitsi contends that his sentence was imposed in violation of his right to due process based on statements regarding his national origin filed on behalf of the victim and comments made by the court at the sentencing hearing.  We affirm the sentence.

## I. CASE HISTORY

[¶2]   Viewing the evidence in the light most favorable to the State, the following facts were established at trial.[1]  *See State v. Treadway*, 2014 ME 124, ¶ 2, 103 A.3d 1026.  On February 10, 2010, Daudoit Butsitsi shot and killed the victim at an apartment building in Portland.  Over the course of that day, Butsitsi and the victim had had two physical fights.  That evening, Butsitsi obtained a gun.  While a friend waited in a car nearby, Butsitsi waited in the hallway of the apartment building where he and the victim lived.  As the victim was exiting the building with two friends, Butsitsi pushed past one of the victim's friends and shot the victim six times.

[¶3]   In March 2010, Butsitsi was indicted for intentional or knowing murder.  *See* 17-A M.R.S. § 201(1)(A).  At the jury trial, Butsitsi contended that he shot the victim in self-defense after seeing the victim pull out what Butsitsi believed was a gun.  Butsitsi presented evidence that he was from what is now the Democratic Republic of the Congo and that he was exposed to violence and conflict there.[2]  He also presented evidence that the victim was from the Congo region.  The jury found Butsitsi guilty of murder.

---

[1]   A more detailed recitation of the facts can be found in *State v. Butsitsi*, 2013 ME 2, ¶¶ 2-4, 60 A.3d 1254, which affirmed the murder conviction, *id*. ¶ 1.

[2]   Briefly in Butsitsi's opening statement and more extensively in his closing argument, Butsitsi, through counsel, discussed a concept he termed "the code of the streets," which he tied to his upbringing

[¶4]   Prior to Butsitsi's sentencing hearing, the State filed a sentencing memorandum in which it argued for a maximum and final sentence of forty-five years.   The State's memorandum did not mention Butsitsi's national origin. Butsitsi filed a sentencing memorandum in which he argued that he should receive only the minimum mandatory sentence of twenty-five years.  *See* 17-A M.R.S. § 1251 (2014).  Butsitsi argued that his exposure to violence and civil unrest in the Congo, where he lived until age thirteen, was a significant mitigating factor.  He argued that he perceives and reacts to threats of violence differently than people who did not grow up in a similar setting and that his knowledge that the victim was also from the Congo may have contributed to his reaction.

[¶5]   Also filed with the court for consideration during sentencing, among other documents, were letters from community members asking the court to impose a sentence that would set an example for others from the Congo or elsewhere in Africa and help minimize conflicts between ethnic groups[3] within the community.  The victim's family submitted a letter requesting a life sentence to punish Butsitsi and send a message to the community.  *See* 17-A M.R.S.

---

and early exposure to violence, and which he argued shed light upon his state of mind at the time of the shooting.

  [3]  Butsitsi testified at trial that his family was forced to leave the Congo because they were unsafe as a result of their mixed tribal or ethnic heritage.  One of the letters submitted to the court for consideration at sentencing detailed the "ethnic" or "tribal" conflict between two regions in the Congo, and the letter claimed that Butsitsi is from one region and that the victim was from the other.

§§ 1171(2)(B)(2), 1174 (2014) (providing that a victim, as defined by section 1171, must have the opportunity to participate at sentencing, and that statements on behalf of the victim must be heard and considered at sentencing; leaving to the court's discretion whether others, including community members, will be allowed to participate at sentencing).

[¶6]  On December 1, 2011, the court held a sentencing hearing.  The State argued for a basic term of imprisonment of forty to forty-five years. *See* 17-A M.R.S. § 1252-C(1) (2014).  The State's request was based upon the nature of the crime and the aggravating factors resulting from Butsitsi's premeditation, use of a firearm, motive, and placing others in danger.  The State then argued for a maximum and final sentence of forty-five years, citing the mitigating and aggravating factors related to Butsitsi and his crime's impact on the victim's family and friends.  *See* 17-A M.R.S. §§ 1201(1)(A), 1252-C(2), (3) (2014).

[¶7]  Butsitsi, through counsel, argued for the twenty-five-year minimum mandatory sentence.  He stated, at the outset of his argument, that "[o]ne of the issues that has been brought forward, [and] I think that is very germane here, is the cultural underpinnings.  I think everyone is tuned into that as a part of this case." He went on to argue that these cultural underpinnings should be considered a mitigating factor, because his exposure to violence in the Congo had an effect on

his psychological reaction to threats of violence. He argued that his conduct was not, despite the State's characterization, premeditated, but rather that he perceived the victim as a threat because they had fought earlier in the day. The court then addressed Butsitsi and stated:

> I have to say, I'm not—I understand the argument and certainly the evidence indicated that [Butsitsi] was exposed to violence and chaos during the early part of his life, but if he came to this country with the belief that he needed to respond to violence by taking things into his own hands, doesn't that really argue for the [c]ourt to send a message—and I understand that the members of the community—of his community here are asking the [c]ourt to send a message to the exact contrary, that it is not appropriate for people to take matters into their own hands and to respond to violence with violence if that's indeed what the case—that—my understanding is that that is—that [the victim's father's] message asks for a sentence that teaches the community and helps reinforce the community's belief in the American justice system. And isn't it important for the State to send a message to [Butsitsi] and the community as a whole that we can't have this?

[¶8] Butsitsi, through counsel, responded that there was no way of knowing that "a sentence in excess of [twenty-five] years somehow is going to have a difference or an impact on the African youth in American society." The court clarified that what it had meant was that although Butsitsi's conduct may have been understandable, it was not excusable. Butsitsi argued that indeed his conduct should not be excused but that his cultural background cuts against the State's argument that this was a premeditated crime, and cuts against the seriousness of bringing the gun to the apartment. Butsitsi then personally addressed the court.

6

He apologized to the victim's family, said that he never planned to kill the victim, and said that he came from the Congo intending to stay out of trouble and that he had done so until this incident.

[¶9] After the State briefly rebutted Butsitsi's position and Butsitsi declined to respond, the court proceeded to deliver its sentence and reasoning. The court first stated that the crime did not warrant a life sentence, although the victim's family and others in the community had asked for one. The court stated that it was difficult to sentence Butsitsi because his history did not indicate that he might commit a murder. The court stated:

> It's clear that [Butsitsi] had a difficult childhood while he was living in Africa with his family. He came to this country in hopes of making a better life along with other members of the community, who likewise immigrated from places in Africa. And that community by and large has established itself in Portland and it is making a real contribution to the life and vitality of the city.

[¶10] The court then recited the sentencing goals that would be applicable, including deterrence, rehabilitation, fair warning to others of the sentence that may accompany a crime, and recognition of the gravity of the offense. *See* 17-A M.R.S. § 1151 (2014). In discussing deterrence, the court stated:

> [T]he [c]ourt needs to issue a sentence in this case that sends the message, to anyone who needs to get that message, that shooting another person deliberately, in the way that [Butsitsi] did, will not be tolerated, will be dealt with in a way that one hopes would deter anyone considering that type of conduct from going forward with it.

In discussing fair warning, the court stated:

> [T]he [c]ourt has been specifically asked in a number of letters, which I have reviewed, to issue a sentence that tells [Butsitsi's] community and the community in which the [victim's] family are a part but also the wider community of all of the people who live in this area in this state of the kind of sentence that people will get if they engage in this type of conduct. And that is a significant consideration.

[¶11] At oral argument on this appeal, Butsitsi specifically pointed to this last statement as evidence of the court's improper consideration of Butsitsi's national origin in its sentencing.

[¶12] The court then turned to the sentencing analysis codified at 17-A M.R.S. § 1252-C (2014) and determined that, based upon the way the murder occurred and the apparent motive for the murder, the basic sentence was forty to forty-five years. The court stated that it did not accept Butsitsi's "suggestion" that his upbringing gave him any right to shoot the victim.

[¶13] The court then moved to its recitation of the aggravating and mitigating factors. The court stated that "the most significant aggravating factor" was the impact on the victim's family and "the broader community," and that the incident seemed to have "torn a hole in the fabric of the community that will take a long, long time to mend if it ever is mended." The court stated that it was "tak[ing] seriously the exhortation . . . in the letters that [it] received that the justice system of Maine, which in this part of the world represents the American justice system,

8

needs to respond in a way that does justice to the occasion." The court also considered as aggravating factors that Butsitsi had put others at risk and used a firearm.

[¶14] The court then recited the following mitigating factors: Butsitsi's age, degree of family support, limited criminal history, exposure to violence during childhood, low to moderate risk for violence, and participation in a batterer's intervention program at the jail. In discussing Butsitsi's upbringing, the court stated:

> In terms of his upbringing, his exposure to violence, I do consider that a mitigating factor—meaning, I guess, it makes it somewhat more understandable why he would respond in the way that he evidently did to the hostility that [the victim] did display toward him that was—that it was there, clearly. But I can't bring myself to give it weight to the level of diminishing or excusing his actions simply because I don't think our society can respond in that fashion. That is just not a message that the [c]ourt can afford to send to anyone who might be interested.

[¶15] The court found that "the mitigating factors outweigh the aggravating factors somewhat, although not substantially." The court imposed a final sentence of thirty-eight years and ordered Butsitsi to pay restitution in the amount of $2,261.

[¶16] In December 2011, Butsitsi appealed from his judgment of conviction and applied to the Sentence Review Panel for the right to appeal his sentence to this Court pursuant to 15 M.R.S. § 2151. The Sentence Review Panel granted Butsitsi's application pursuant to M.R. App. P. 20 and 15 M.R.S. § 2152, and the

matters were consolidated for appeal. M.R. App. P. 20(h). However, Butsitsi's attorney for those appeals did not brief the sentencing issue. We affirmed Butsitsi's conviction, *State v. Butsitsi*, 2013 ME 2, 60 A.3d 1254, without mentioning the sentence appeal, *see id.* ¶ 6.

[¶17] Butsitsi filed a petition for post-conviction review, alleging, among other things, ineffective assistance of counsel on the sentence appeal. The trial court granted that portion of Butsitsi's petition and ordered that his right to seek review of his sentence be reinstated pursuant to 15 M.R.S. § 2130 (2014). Butsitsi moved this Court to reinstate his sentence appeal, and the State did not object. We granted Butsitsi's motion and reinstated his sentence appeal.

## II. LEGAL ANALYSIS

[¶18] Butsitsi contends that the court's statements at the sentencing hearing, quoted above, created the appearance of racial bias, and that his sentence was therefore illegally based upon his race or national origin, in violation of his due process rights.[4] As a preliminary matter, we address the proper standard of review

---

[4] The State argued in its brief that the issue Butsitsi raises by way of approval of the Sentence Review Panel is waived for failure to raise it on direct appeal pursuant to 15 M.R.S. § 2115 (2014), because he challenges the legality, not the propriety, of his sentence. Butsitsi's appellate counsel in his direct appeal from his conviction failed to brief the sentencing issue, and Butsitsi was granted the right to seek review of his sentence as a remedy for that failure in his post-conviction challenge; therefore, Butsitsi's challenge is not "waived." Further, because the availability of direct review is not one of the three exceptions enumerated in 15 M.R.S. § 2151 (2014) that otherwise allows defendants to apply for review of a sentence of at least one year's imprisonment, and because review of Butsitsi's sentence will serve the purposes enumerated in 15 M.R.S. § 2154 (2014), Butsitsi's use of the sentence review process was proper in the first place.

on appeal, when, as here, there was no objection to the court's statements at any point during the sentencing hearing.

A.    Standard of Review

[¶19]  "Generally, if a party fails to raise an objection in the trial court, this Court will review the record only for obvious errors."  *State v. Schofield*, 2005 ME 82, ¶ 28, 895 A.2d 927; M.R.U. Crim. P. 52(b).  In the context of sentencing hearings, we have applied obvious error review to the following unpreserved issues: (1) whether a defendant's equal protection or due process right was violated by a lack of data regarding other defendants' basic sentences, *State v. Nichols*, 2013 ME 71, ¶ 23, 72 A.3d 503; (2) whether the sentencing court had inappropriately relied on inaccurate factual information in a pre-sentence report, *State v. Tapley*, 609 A.2d 722, 723 (Me. 1992); and (3) whether a defendant's rights to trial by jury and due process were violated by his or her exposure to an increased sentence beyond the statutory maximum based upon facts that were not presented at trial nor proved beyond a reasonable doubt as part of the crime charged, *e.g.*, *Schofield*, 2005 ME 82, ¶¶ 2, 28-29, 33-35, 895 A.2d 927 (noting that, although not all jurisdictions were in agreement as to which standard of review should apply in this context, most jurisdictions applied obvious or plain error review, and comparing the case to similar earlier cases where we applied obvious error review).  Outside the context of sentencing hearings, we have

applied obvious error review to unpreserved claims of judicial bias. *See, e.g.*, *In re Kaitlyn P.*, 2011 ME 19, ¶¶ 7, 9, 12 A.3d 50.

[¶20]  Butsitsi asks us to adopt the approach enunciated by the Second Circuit in *United States v. Kaba*, 480 F.3d 152, 156-58 (2d Cir. 2007) and *United States v. Leung*, 40 F.3d 577, 585-86 (2d Cir. 1994), which calls for a de novo review of unpreserved claims of judicial bias based upon the defendant's national origin at sentencing.  In *Kaba* and *Leung*, the Second Circuit reasoned that it was irrational to require defendants to contemporaneously object to the sentencing court's remarks when the remarks were either ambiguous or made in the course of announcing the sentence and doing so could risk upsetting the sentencing judge. *Kaba*, 480 F.3d at 158; *Leung*, 40 F.3d at 586.

[¶21]  The Eleventh Circuit has explicitly rejected the Second Circuit's approach.  *United States v. Rodriguez*, 627 F.3d 1372, 1377-80 (11th Cir. 2010) (outlining reasons that the contemporaneous objection rule is ideal and applying plain error[5] review to an unpreserved challenge to a comment at sentencing about the defendant's national origin); *see also United States v. Trujillo-Castillon*, 692 F.3d 575, 578 (7th Cir. 2012) (applying plain error review to an unpreserved

---

[5]  "Our review pursuant to the 'obvious error' standard of M.R. Crim. P. 52(b) is similar to the 'plain error' review announced by the U.S. Supreme Court pursuant to Fed.R. Crim. P. 52(b) . . . ." *State v. Burdick*, 2001 ME 143, ¶ 13 n.9, 782 A.2d 319.  M.R.U. Crim. P. 52(b) and M.R. Crim. P. 52(b) are identical.

claim of judicial bias). The First Circuit has not considered the issue. *See United States v. Webster*, 54 F.3d 1, 7 (1st Cir. 1995) (addressing a defendant's argument that his sentence was based upon his "alien status" without articulating the standard of review).

[¶22] We decline to adopt the Second Circuit's approach. Our regular practice is to apply obvious error review to unpreserved claims of error. The rationale for the rule makes sense here as it does in other contexts: requiring a contemporaneous objection promotes finality in judgments; allows the court to clarify or correct any perceived errors or misstatements; and deters parties from rolling the dice for a favorable decision and then, if a decision is unfavorable, raising issues on appeal that a party or counsel was aware of, but did not assert, before the trial court reached its decision. *See In re Kaitlyn P.*, 2011 ME 19, ¶ 9, 12 A.3d 50; *In re Anthony R.*, 2010 ME 4, ¶ 8, 987 A.2d 532.

[¶23] Requiring contemporaneous objections in these cases demonstrates respect for the judiciary's ability to fairly sentence a defendant in the face of challenges of potential or alleged bias. *Compare Rodriguez*, 627 F.3d at 1380 ("To suggest that judges, whose solemn duty it is to apply the law fairly and impartially to all parties before them, would vindictively respond to an attorney's objection by punishing the client is demeaning to the judiciary."), *with Kaba*, 480 F.3d at 158 ("In part because a defendant is understandably reluctant to suggest to a judge that

an ambiguous remark reveals bias just as the judge is about to select a sentence, we concluded that the defendant did not waive her argument on appeal."). Additionally, it would demean the bar if counsel were excused from asserting a contemporaneous objection to the appearance of judicial bias because of some notion that counsel would "cower in their seats, fearing retribution from the bench if they do object." *Rodriguez*, 627 F.3d at 1380. Therefore, we will apply obvious error review to Butsitsi's challenge on appeal. *See* M.R.U. Crim. P. 52(b).

B.      Judicial Bias

[¶24] Butsitsi argues that the court's sentence was illegally based upon his national origin because, he alleges, the court repeatedly referenced his national origin during the sentencing hearing and made other statements that he contends show at least the appearance of racial bias. Butsitsi asks us to hold that the sentencing court's references to his national origin and his community created a constitutionally impermissible appearance of bias. *See Kaba*, 480 F.3d at 158.

[¶25] Courts are afforded "wide discretion in determining the sources and types of information to consider when imposing a sentence." *State v. Reese*, 2010 ME 30, ¶ 28, 991 A.2d 806. *See generally Pepper v. United States*, 562 U.S. 476 (2011). A defendant's right to due process of law continues through his or her sentencing hearing, *Gardner v. Florida*, 430 U.S. 349, 358 (1977), and "[s]entencing on the basis of racial categories or nationality, as opposed to

demonstrated individual involvement and culpability, is constitutionally impermissible," *State v. Gonzales*, 604 A.2d 904, 907 (Me. 1992); *Pepper*, 562 U.S. at 489 n.8 (citing *Leung*, 40 F.3d at 586).

[¶26]  Here, even if we were to adopt the Second Circuit's appearance of bias test, *see Kaba*, 480 F.3d at 158, the court's statements did not create the appearance of bias.  Viewing the court's statements in the context of the criminal trial and sentencing hearing, *see State v. Farnham*, 479 A.2d 887, 889 (Me. 1984), the court appears to have carefully and thoughtfully weighed all of the considerations presented to it by Butsitsi, the State, and the victim's family and community.  Although the court did reference some of these considerations in delivering its sentence, the court's statements in no way suggest that the sentence was based upon Butsitsi's race or national origin, or that the sentencing judge was otherwise biased against Butsitsi.

[¶27]  At the sentencing hearing, Butsitsi's counsel asserted that the "cultural underpinnings" of the case were relevant to the proceeding, and repeatedly argued that the court should consider Butsitsi's exposure to violence in the Congo as a mitigating factor.  The court did just that ("In terms of his upbringing, his exposure to violence, I do consider that a mitigating factor") and sentenced Butsitsi to a final term of imprisonment, for what was a planned, ambush murder, lower than the basic sentence it had enunciated.  For these reasons,

Butsitsi has failed to demonstrate any error—let alone obvious error—in the court's sentencing.

The entry is:

Sentence affirmed.

---

**On the briefs:**

David Paris, Esq., Bath, for appellant Daudoit Butsitsi

Janet T. Mills, Attorney General, and Lauren F. LaRochelle, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

David Paris, Esq., for appellant Daudoit Butsitsi

Lauren F. LaRochelle, Asst. Atty. Gen., for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2010-1060
FOR CLERK REFERENCE ONLY