MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 60
Docket:        Som-22-182
Argued:        April 6, 2023
Decided:       August 31, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## NICHOLAS W. NORRIS

CONNORS, J.

[¶1]  Nicholas W. Norris appeals from a judgment of conviction of two counts of aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(H), (M) (2023), and one count of unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2023), and a judgment of criminal forfeiture, 15 M.R.S. § 5826 (2023), entered by the trial court (Somerset County, *Mullen, C.J.*) after a jury trial.  He challenges the denial of his motion to suppress evidence and argues that his right to a speedy trial was violated.  We affirm.

## I.  BACKGROUND

### A.    The Tracking Warrant and Search Warrant

[¶2]   On January 23, 2020, a special agent with the Maine Drug Enforcement Agency (MDEA) applied for a search warrant authorizing the

installation and use of an electronic tracking device on a black 2011 Ford Fiesta registered to Norris.  The request was based largely on information provided by a confidential informant (CI) and a confidential source (CS).  The trial court (Penobscot County, *Lucy, J.*) issued the warrant, and the special agent installed the tracking device on Norris's vehicle on February 5, 2020.

[¶3]  Two weeks later, the special agent applied for a second search warrant, seeking authorization to search Norris's vehicle and person for evidence of drug trafficking.  The affidavit filed in support of the search warrant included the information contained in the tracking warrant affidavit and additional information obtained from in-person surveillance by MDEA special agents, the tracking device, and a cooperating defendant (CD).  The trial court (*Campbell, J.*) issued the warrant.

[¶4]  On February 21, 2020, at the direction of MDEA special agents, a state trooper stopped Norris's vehicle on the ramp of Exit 157 of Interstate 95, near Palmyra and Newport.  The special agents executed the search warrant and found large quantities of cocaine, fentanyl, and heroin, as well as $1,781 in cash, in Norris's vehicle.

**B.      The Trial Court Proceedings**

**1.      The Proceedings in Penobscot County**

[¶5]  The State filed a complaint in the trial court in Penobscot County, charging Norris with aggravated trafficking of scheduled drugs and unlawful trafficking in scheduled drugs.  Several months later, in July 2020, a Penobscot County grand jury indicted Norris.  The State alleged in the indictment that the crimes were committed in Newport.

[¶6]  The following month, Norris filed a motion to suppress the evidence seized pursuant to the two warrants.  Citing the state and federal constitutions, Norris argued primarily that the warrants were not supported by probable cause because the supporting affidavits—which relied heavily on the information provided by the CI, CS, and CD[1]—did not establish the basis of each informant's knowledge, the circumstances of the informants' cooperation, or the reliability of the informants.

[¶7]  The trial court (*A. Murray, J.*) held a suppression hearing in April 2021.  The evidence offered at the hearing included the warrants with

---

[1]  The affidavits attached to the warrant applications did not define the terms "confidential informant," "confidential source," and "cooperating defendant."  Our understanding is that these terms generally describe persons who provide information to law enforcement and whose identities are known to law enforcement but that the specific meanings ascribed to these terms varies among law enforcement agencies.

4

accompanying affidavits and inventories of the information and items seized, as well as brief testimony from the special agent who authored the warrant applications. On cross-examination, the special agent testified that the exit ramp where Norris was stopped is close to the border of Penobscot County and Somerset County and that it is possibly located in Palmyra, not Newport. With respect to the second search warrant, the special agent testified that he did not provide Norris with a copy of the search warrant or a receipt for the seized property, the inventory was not made in Norris's presence, and he did not indicate on the form in whose presence the inventory was made. Although not raised in his written motion to suppress, Norris argued orally that the evidence should also be suppressed because of the special agent's failure to adhere to the requirements of M.R.U. Crim. P. 41. In July 2021, the trial court denied Norris's motion and scheduled the matter for a trial the following month.

[¶8] On the first day of trial, before the jury was sworn, the State filed a notice of dismissal of the indictment pursuant to M.R.U. Crim. P. 48(a). The State explained that it had determined that law enforcement stopped Norris in Somerset County, approximately 1,800 feet from the boundary with Penobscot County and, therefore, the "hundred rods rule" did not apply,[2] barring the case

---

[2] *See* 15 M.R.S. § 3 (2023) ("When an offense is committed on the boundary between 2 counties or within 100 rods thereof; or a mortal wound or other violence or injury is inflicted or poison is

from being tried in Penobscot County. The State expressed that it intended to indict Norris in Somerset County. Norris objected to the dismissal, insisted that the trial proceed in Penobscot County, and argued that his right to a speedy trial was being violated. The court (*Anderson, J.*) ruled that it had to accept the notice of dismissal and that because the matter had been dismissed, Norris no longer had a speedy trial claim in that proceeding. The court told Norris that he might have recourse in Somerset County if the State refiled the charges in that venue.[3]

### 2.    The Proceedings in Somerset County

[¶9]  Two days later, on August 26, 2021, the State indicted Norris in Somerset County, and a warrant issued. Norris was eventually arrested. At his initial appearance on November 12, 2021, the matter was scheduled for docket call on November 29. Although the matter had been immediately scheduled for trial, Norris requested a continuance and a dispositional conference. Just before the dispositional conference in January 2022, Norris's attorney moved

---

administered in one county, whereby death ensues in another, the offense may be alleged in the complaint or indictment as committed, and may be tried in either."); *Rod*, American Heritage Dictionary of the English Language (5th ed. 2016) (defining "rod" as "[a] linear measure equal to . . . 16.5 feet").

[3]  The court stated, "I believe my role is to accept the dismissal and put it in the file and indicate that the case is dismissed pursuant to the dismissal. I'm sure you have a variety of recourses in the future depending on what happens, but those avenues are certainly open to you if there's further prosecution in Somerset County."

6

to withdraw from the case. After a couple of changes in defense counsel, the court (*Mullen, C.J.*) held a jury trial in April 2022.

[¶10] At the beginning of the trial, the State and Norris informed the court that they were stipulating to the adoption of the suppression order from Penobscot County.

[¶11] After two days of hearing testimony and viewing exhibits, the jury found Norris guilty on the three drug charges. The court entered a judgment on the jury's verdict and found that $1,500 was subject to criminal forfeiture. Norris was sentenced to twelve years of imprisonment, with all but five years suspended, and four years of probation. Norris timely appealed.

## II. DISCUSSION

A. **Norris's speedy trial claim under the Maine Constitution fails because he did not adequately assert his right, and his claim under the United States Constitution fails under obvious error review.**

[¶12] Norris argues that his right to a speedy trial was violated under both the Maine and United States Constitutions.[4]

---

[4] Although not presented as a stand-alone argument, Norris also suggests that the trial court erred or abused its discretion in accepting the State's notice of dismissal over his objection. Because the dismissal occurred in the Penobscot County case and this appeal is from the Somerset County case, the issue is not reviewable in this appeal. Norris should have appealed from the dismissal in Penobscot County had he wished to challenge the court's ruling in that proceeding. Even were we to reach this issue on the merits, however, we would conclude that the trial court did not err. Because the trial had not yet begun, the State had unconditional authority to dismiss the indictment. *See* M.R.U. Crim. P. 48(a); *see also State v. Tenney*, 2003 ME 100, ¶ 8, 828 A.2d 755 (stating that, in the double-jeopardy context, a trial does not commence until the jury is sworn).

**1.    Norris's speedy trial claim fails under the Maine Constitution because he did not adequately assert his right.**

[¶13]  Under our primacy approach, we address the state claim first and consider the federal claim "only if the state constitution does not settle the issue."  *State v. Moore*, 2023 ME 18, ¶ 17, 290 A.3d 533 (quotation marks omitted).

[¶14]  Article I, section 6 of the Maine Constitution secures the right to a speedy trial.  We recently explained in some depth the scope of that right in *Winchester v. State,* 2023 ME 23, ¶¶ 14-39, 291 A.3d 707.  In that decision, we articulated a four-factor balancing test for evaluating a speedy-trial claim, examining (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) prejudice.  *Id.* ¶¶ 25-31.  Although these are the same four factors evaluated under the United States Constitution, *see Barker v. Wingo*, 407 U.S. 514, 530-33 (1972), we noted that one difference between the federal and Maine tests "is that a failure to assert the right can be determinative under the Maine Constitution but not under the United States Constitution," *Winchester*, 2023 ME 23, ¶ 33, 291 A.3d 707.

[¶15]  Norris argues that he adequately asserted his right to a speedy trial on two occasions.  First, he points to his claim of a speedy-trial violation in the Penobscot County proceedings.  *See supra* ¶ 8.  But he attempted to assert his

right after the State had dismissed the indictment. There is no right to a speedy trial on dismissed charges. *See State v. O'Clair*, 292 A.2d 186, 191 (Me. 1972); *State v. Harriman*, 259 A.2d 752, 755 (Me. 1969). Moreover, when the indictment was dismissed, the trial court told Norris that his recourse would be in Somerset County if the charges were refiled. But Norris did not file a motion demanding a speedy trial in Somerset County, and he did not move to dismiss the Somerset County indictment for lack of a speedy trial.[5] *See State v. Couture*, 156 Me. 231, 245, 163 A.2d 646, 656 (1960) ("It seems that the proper method for raising the question of violation of the right to a speedy trial is by motion addressed to the court at which the indictment is pending."); *State v. Smith*, 400 A.2d 749, 754 (Me. 1979) (indicating that the form and timing of the assertion of the right matters).

[¶16] Norris also points to the motion to withdraw filed by his attorney in Somerset County, in which his attorney stated:

> Although Mr. Norris asked this Court at his initial appearance to schedule a trial in Somerset County as soon as possible, defense counsel was already scheduled to conduct several trials in December of 2021 and moved for a continuance. . . . Mr. Norris continues to insist on a speedy trial.

---

[5] *See McDonald v. Commonwealth*, 569 S.W.2d 134, 137 (Ky. 1978) ("[A] motion to dismiss for lack of a speedy trial is [not] the same as a motion for a speedy trial in that it unequivocally puts the trial court on notice that the defendant demands a speedy trial. The motion to dismiss presents an issue which must be decided by the trial court based on the delay prior to the motion.").

But there is no evidence in the record that Norris demanded a speedy trial at his initial appearance in Somerset County, and any demand would have been negated by his contemporaneous request for a continuance. *See Courtney v. State*, 275 So. 3d 1032, 1043 (Miss. 2019).

[¶17] In sum, Norris's speedy trial claim fails under the Maine Constitution because he did not assert his right to a speedy trial in the Somerset County proceedings.

**2. Norris's speedy trial claim under the United States Constitution fails under obvious error review.**

[¶18] As noted above, under the test applied to an alleged violation of the speedy-trial right contained in the Sixth Amendment of the United States Constitution, assertion of the right is one of the four factors reviewed, but unlike the test under the Maine Constitution, a failure to assert the right is not dispositive. *See Barker*, 407 U.S. at 528. When the right is not properly asserted at the trial level, however, we review the federal claim only for obvious error, consistent with the plain error review used by the federal circuit courts. *See, e.g.*, *United States v. Abad*, 514 F.3d 271, 274 (2d Cir. 2008); *United States v. Mosteller*, 741 F.3d 503, 508 n.6 (4th Cir. 2014); *United States v. Reagan*, 725 F.3d 471, 487 (5th Cir. 2013); *United States v. Gearhart*, 576 F.3d 459, 462-63 (7th Cir. 2009); *United States v. Hayes*, 40 F.3d 362, 364 (11th Cir. 1994); *see also State v. Butsitsi*,

2015 ME 74, ¶ 21 n.5, 118 A.3d 222 (stating that our obvious error standard of review is commensurate with a plain error standard of review).

[¶19]  We therefore consider Norris's federal claim of a speedy trial violation by addressing seriatim the four factors within the obvious error prism.

### a.  Length of the Delay

[¶20]  The speedy trial clock starts with an indictment, arrest, or formal accusation.  *See United States v. Marion*, 404 U.S. 307, 313-22 (1971).  In *United States v. MacDonald*, 456 U.S. 1, 7-9 (1982), the Supreme Court held that, absent bad faith, the time between the dismissal of charges and a subsequent indictment may not be considered in calculating the length of the delay under the Sixth Amendment.  That decision, however, left open the question presented here, which the Massachusetts Supreme Judicial Court summed up as follows:

> The question whether the speedy trial clock "resumes or resets" arises in the context of formal charges that are brought, dismissed, and brought again.  The issue is whether the time between an initial charge and dismissal ("resume," or "tolling" theory), or only the time following a reinstated, formal charge ("reset" theory), should count . . . for purposes of a defendant's constitutional right to a speedy trial.

*Commonwealth v. Butler*, 985 N.E.2d 377, 383-84 (Mass. 2013).

[¶21] Courts that have confronted the issue are split. Some jurisdictions follow the "resume" theory. *See, e.g., United States v. Colombo*, 852 F.2d 19, 23-24 (1st Cir. 1988); *United States v. Fuesting*, 845 F.2d 664, 668 (7th Cir. 1988); *Butler*, 985 N.E.2d at 383-84; *State v. Allen*, 837 A.2d 324, 326-27 (N.H. 2003); *Durkee v. State*, 357 P.3d 1106, 1111 (Wyo. 2015); *Heard v. State*, 761 S.E.2d 314, 318-19 & n.2 (Ga. 2014); *State v. Brazell*, 480 S.E.2d 64, 70 (S.C. 1997); *People v. Nelson*, 360 P.3d 175, 181-83 (Colo. App. 2014); *State v. Guerrero*, 110 S.W.3d 155, 159 (Tex. Ct. App. 2003); *In re Welfare of G.D.*, 473 N.W.2d 878, 881-82 (Minn. Ct. App. 1991). The First Circuit reasons, "Were it otherwise, the government would be able to nullify a defendant's speedy trial right by the simple expedient of dismissing and reindicting whenever speedy trial time was running out on its prosecution." *Colombo*, 852 F.2d at 23-24; *see also Butler*, 985 N.E.2d at 384 (noting that "the Supreme Court in *MacDonald* did not hold that the period *prior* to dismissal does not count against the government" for speedy trial purposes).

[¶22] Other jurisdictions follow the "reset" theory, excluding the delay caused by the initial filing and dismissal of charges. *See, e.g., United States v. Pullen*, 721 F.2d 788, 791 (11th Cir. 1983); *United States v. Wallace*, 848 F.2d 1464, 1469 (9th Cir. 1988); *United States v. Koller*, 956 F.2d 1408, 1413 (7th Cir.

1992); *United States v. Atisha*, 804 F.2d 920, 928-29 (6th Cir. 1986); *State v. Henson*, 643 A.2d 432, 438-39 (Md. 1994); *State v. Hill*, 125 P.3d 1175, 1178-79 (N.M. Ct. App. 2005); *Lott v. State*, 98 P.3d 318, 327-28 (Okla. Crim. App. 2004). At least one court has taken a modified reset approach. *See State v. Gill*, 283 P.3d 236, 245-46 (Kan. Ct. App. 2012) (restarting the speedy trial clock only if the government dismissed the first case out of necessity or if the charges in the second case are not identical to those in the first case).

[¶23] We are persuaded by the reasoning of the First Circuit and the Massachusetts Supreme Judicial Court, and we adopt the "resume" theory under which both periods of delay count, at least when the charges remain the same, the first case was dismissed on the ground that it was mistakenly filed in the wrong county, and the accused is immediately reindicted. As such, when considering the *Barker* factors, we will include the full twenty-six-month delay. Federal courts generally find a delay of one year presumptively prejudicial to initiate a speedy trial analysis weighing the other three factors. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). Thus, we weigh this factor in favor of Norris.

###### b. Reasons for the Delay

[¶24]  The next factor is the reasons for the delay.  Periods of delay occasioned by the defendant should not be counted against the State.  *See State v. Spearin*, 477 A.2d 1147, 1154 (Me. 1984).  Periods of delay caused by the State, including those attributable to the court, should be counted against the State.  *See State v. Cadman*, 476 A.2d 1148, 1151-52 (Me. 1984).  The weight to be assigned to each period of delay depends on the type of delay.  *Barker*, 407 U.S. at 531.  For example, delays caused by the State with the intent to prejudice the defendant are weighed more heavily against the State.  *See id.* Delays caused by the State's negligence and delays that are attributable to the government, but over which prosecutors and courts have little or no control, are given less weight.  *See Cadman*, 476 A.2d at 1152.  In rare instances, a delay can be deemed neutral if it is attributable to neither the State nor the defendant.

[¶25]  Because Norris did not raise a speedy trial claim in the trial court, assessing the reasons for the delay requires some speculation.  Some reasons that weigh in favor of Norris include the State's negligence in filing the indictment in the wrong county, the collateral consequences of refiling the indictment in the correct county, and the time it took for the drug evidence to be tested and for the results of the analysis to be provided in discovery.  Some

reasons that weigh against Norris include Norris's motion to suppress, his request for additional time to file a written closing argument after the suppression hearing, his request for a continuance to prepare for trial, and the withdrawal of his counsel. Nearly all the delay in Somerset County can be attributed to Norris. Finally, some delay must be assigned to the pandemic.

[¶26] On this record, we conclude that this factor favors neither Norris nor the State.

### c. Assertion of the Right

[¶27] The third factor is the extent to which the defendant asserted the right to a speedy trial. As noted above, Norris did not properly assert his right to a speedy trial. We weigh this factor against Norris.

### d. Prejudice

[¶28] The last factor is the extent to which the delay prejudiced the defendant. Prejudice is assessed "in the light of the interests of defendants which the speedy trial right was designed to protect. [The Supreme Court] has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The Supreme Court deems the third interest as the "most serious." *Id.*

[¶29]  Here, Norris was incarcerated for approximately eighteen months during the prosecution of this matter.  Several of those months, however, can be attributed to a revocation of Norris's bail after he was arrested for an unrelated crime.  *See United States v. McGhee,* 532 F.3d 733, 740 (8th Cir. 2008) ("Any prejudice from pretrial incarceration was attributable to [the defendant's] own acts.").  Norris claims that he was worried that, if convicted, he would not receive credit for the time that he had served in Penobscot County.  Such a claim, however, should have been somewhat tempered by the trial court's remarks after the Penobscot County case was dismissed wherein the presiding justice stated that were he the sentencing justice in a later prosecution, he would give Norris credit for that time.  Finally, and most importantly under the federal test, Norris has not suggested that his ability to develop a defense was actually impaired by the delay due to fading memories or lost evidence.

[¶30]  We weigh this factor against Norris.

### e.    No Obvious Error

[¶31]   Finally, as noted above, we review Norris's claim under the obvious error standard.  *See* M.R.U. Crim. P. 52(b) ("Obvious errors or defects affecting substantial rights may be noticed although they were not brought to

the attention of the court."). Obvious error is "a seriously prejudicial error tending to produce manifest injustice." *State v. Pabon*, 2011 ME 100, ¶ 18, 28 A.3d 1147 (quotation marks omitted). Although a substantial right is implicated here, there is no indication of actual prejudice or bad faith on the part of the prosecution, and the amount of delay was lengthy but not primarily attributable to the State. Therefore, we conclude that the trial court did not obviously err by not sua sponte declaring that Norris's federal speedy trial right had been violated.

**B. Norris's claim under the Maine Constitution that the evidence obtained pursuant to the warrants was inadmissible is rejected as unpreserved and undeveloped, and his claim under the United States Constitution that the warrants were not supported by probable cause fails.**

[¶32] Citing both the Maine and United States Constitutions, Norris contends that the tracking warrant and search warrant were not supported by probable cause as required because the supporting affidavits did not sufficiently establish the veracity or reliability of the informants on which the affidavits relied.

**1.  We reject Norris's claim under the Maine Constitution because he did not properly preserve the issue before the trial court and did not develop the argument on appeal.**

[¶33]  As we noted above, *see supra* ¶ 13, we consider state constitutional claims before reaching concomitant federal constitutional claims.  *Moore*, 2023 ME 18, ¶ 17, 290 A.3d 533.  For a claim under the Maine Constitution to be deemed preserved for our review, however, the party advancing the claim cannot merely allude to or cite the Maine Constitution but must develop his argument.  *See id.* ¶ 19; *cf. State v. White*, 2022 ME 54, ¶ 31 n.13, 285 A.3d 262.  We insist on this standard because

> [i]t is the need of every appellate court for the participation of the bar in the process of trying to think sensibly and comprehensively about the questions that the judicial power has been established to answer.  Nowhere is the need greater than in the field of State constitutional law, where we are asked so often to confront questions that have already been decided under the National Constitution.  If we place too much reliance on federal precedent we will render the State rules a mere row of shadows; if we place too little, we will render State practice incoherent.  If we are going to steer between these extremes, we will have to insist on developed advocacy from those who bring the cases before us.

*State v. Bradberry*, 522 A.2d 1380, 1389 (N.H. 1986) (Souter, J., concurring).

[¶34]  What is required to preserve a state constitutional claim will vary by context.  For example, when we have already explained in some depth the scope of the state constitutional provision at issue, such as our discussion in

*Winchester* of Maine's speedy trial provision, a party may preserve the issue by citing our independent analysis of the state constitutional provision in the relevant precedent and explaining how that precedent supports the party's argument. When no precedent provides such independent analysis, however, the party must explicate the applicable provision in the Maine Constitution and explain how it supports the party's position. Generally, an independent analysis of a provision of our state constitution requires "an examination of the text, legislative history, and general historical context of the state constitutional provision; relevant common law, statutes, and rules; economic and sociological considerations; and precedent from jurisdictions with similar provisions to the extent that precedent is deemed persuasive." *Moore*, 2023 ME 18, ¶ 18, 290 A.3d 533.

[¶35] Before the trial court, Norris cited the applicable provision of the Maine Constitution but provided no independent analysis of the Maine provision. *See* Me. Const. art. I, § 5 (prohibiting unreasonable searches and seizures and requiring that warrants be supported by probable cause). Before us, Norris again cited the Maine Constitution, again without any independent analysis of the Maine Constitution's text, context, or other relevant considerations.

[¶36] With respect to a claim that evidence should have been suppressed pursuant to the Maine Constitution, it is particularly important to develop an independent analysis of article I, section 5 because we have yet to rule definitively whether that provision even incorporates an exclusionary rule. *See State v. Veglia*, 620 A.2d 276, 278 n.3 (Me. 1993); *State v. Tarantino*, 587 A.2d 1095, 1098 (Me. 1991); *State v. Fredette*, 411 A.2d 65, 67 (Me. 1979).[6] A party seeking to exclude evidence under article I, section 5 of the Maine Constitution must present a developed argument based on an examination of the factors enumerated above. Because Norris has not done so, we deem the issue waived.

[¶37] Although Norris did not preserve his state constitutional claim, he did present a developed argument based on the Fourth Amendment to the United States Constitution. Thus, we will address his federal claim.

---

[6] It may be more accurate to characterize our precedent on this front as inconsistent. *Compare State v. Robinson*, 33 Me. 564, 570-73 (1852) (arresting judgment based on improperly seized evidence), *State v. Staples*, 37 Me. 228, 229-30 (1854) (arresting judgment where warrant process was insufficient), *State v. Carter*, 39 Me. 262, 263 (1855) (same), *State v. Riley*, 86 Me. 144, 145-47, 29 A. 920, 920 (1893) (quashing judgment based on an illegal seizure), *and State v. Guthrie*, 90 Me. 448, 449-53, 38 A. 368, 368-70 (1897) (discharging defendants based on expired warrant), *with State v. McCann*, 61 Me. 116, 117-18 (1873) (stating that an illegal seizure is no defense), *State v. Plunkett*, 64 Me. 534, 536-38 (1874) (same), *and State v. Schoppe*, 113 Me. 10, 15-16, 92 A. 867, 867-69 (1915) (same).

20

**2.    The evidence obtained through the warrants was admissible under the United States Constitution.**

[¶38]  "When probable cause for the issuance of a warrant is challenged on appeal, we directly review the finding of probable cause made by the magistrate who issued the warrant."  *State v. Mariner*, 2017 ME 102, ¶ 15, 162 A.3d 241 (quotation marks omitted).  "We review only the information within the four corners of the affidavit, but we do so construing the information in the affidavit in a positive light and allowing for reasonable inferences that may be drawn to support the magistrate's determination."  *Id.* (quotation marks omitted).

[¶39]  The federal constitution "require[s] a showing of probable cause, as supported by oath or affirmation, before a search warrant may be issued."  *State v. Warner*, 2019 ME 140, ¶ 19, 216 A.3d 22.  To discern whether there is probable cause, "a magistrate must apply the 'totality-of-the-circumstances approach'" as set forth in *Illinois v. Gates*, 462 U.S. 213, 230-39 (1983).  *State v. Rabon*, 2007 ME 113, ¶ 22, 930 A.2d 268.  "Probable cause is established when, given all the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime

will be found in a particular place." *Id.* (alteration and quotation marks omitted).

[¶40]  When a warrant affidavit is based on information provided by informants, a reviewing magistrate considers "(1) the informant's reliability and basis of knowledge, (2) the informant's claims about the defendant's criminal activities, and (3) other information about the defendant." *State v. Nunez*, 2016 ME 185, ¶ 20, 153 A.3d 84.  "Common indicia of the reliability of an informant's account include first hand observations of illegal activity, the informant's past reliability, and information detailing the informant's own involvement in illegal activity that could expose the informant to criminal liability." *Id.* ¶ 21 (citations omitted).  "The totality-of-the-circumstances approach permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Id.* ¶ 20 (alteration and quotation marks omitted).

[¶41]  We first consider the court's determination that the tracking warrant was supported by probable cause.  The supporting affidavit for the tracking warrant alleged the following:

[¶42] On September 6, 2019, a CI provided information about Norris to an MDEA special agent. The CI said that Norris lives in New York but returns to Maine once a month, selling drugs out of his vehicle in the Newport area. According to the CI, when Norris is in Newport, he stays at various places but will leave those places to deliver drugs. During a recent contact with Norris, the CI observed bags of illegal drugs in Norris's vehicle, including a bag of "molly," a bag of "soft," and a bag of "up," the latter two being powdered cocaine and crack cocaine, respectively.

[¶43] On January 2, 2020, the same CI contacted the special agent to provide additional information. The CI reported that Norris had taken over most of the illegal drug trafficking in the Newport area and that Norris deals in "huge" volumes each day; that Norris has continued to sell drugs out of his vehicle, a black Ford Fiesta, and usually has approximately twenty small bags of drugs in his car when making sales; and that Norris was going to be traveling to Maine with a significant load of drugs, including four ounces of cocaine and a half ounce of heroin.

[¶44] On January 15, 2020, a CS informed another special agent that Norris was on his way to 25 Railroad Street in Newport with a load of drugs from an out-of-state "run." The CS said that Norris had contacted the CS

through Facebook earlier that day and stated that he was close by with "hard, soft, and down," which are terms for crack, cocaine, and heroin, respectively. The CS added that the CS had spoken with Norris a week earlier outside of a residence in Newport and that Norris told the CS that he would be bringing "product" back from Massachusetts on January 13 and was going to be a "one stop shop." According to the CS, when this conversation occurred, Norris was driving a black Ford Fiesta.

[¶45] One of the special agents confirmed with the Maine Bureau of Motor Vehicles that a vehicle matching the descriptions provided by the CI and CS was registered to Norris. On January 15, 2020, the special agent ran Norris's vehicle information through three license plate readers in the New England area. Later that afternoon, the special agent received an email from the Massachusetts Commonwealth Fusion Center, indicating that Norris's vehicle had passed a license plate reader on Route 291 East in Springfield, Massachusetts. On January 16, at approximately 1:00 a.m., a police officer with the Newport Police Department saw Norris's vehicle parked in the driveway of 25 Railroad Street.

[¶46] We conclude that these averments provide a substantial basis for the magistrate's finding of probable cause for the tracking warrant. Although

the affidavit did not include information about the past reliability of the CI and CS or the circumstances under which they came to become informants for the MDEA, the information otherwise contained hallmarks of reliability. The informants provided detailed information based on first-hand knowledge, including information about Norris's vehicle, the types and quantities of drugs that Norris sells, Norris's travel plans, and dates and locations where Norris would have drugs for sale. *See State v. Arbour*, 2016 ME 126, ¶ 13, 146 A.3d 1106 ("An informant's assertions, on their own, may establish probable cause if the affidavit demonstrates the informant's reliability or basis of knowledge, such as firsthand observation of contraband or illegal activity."). The CI and CS made statements against their own interests, further supporting the reliability of the information. *See id.* (stating that an informant's credibility is bolstered when the informant makes statements against his or her penal interest).

[¶47]  Even if the affidavit contained insufficient information about the informants, "an informant's assertions can still support probable cause if the affidavit contains something more, such as corroboration by outside sources." *Id.* (quotation marks omitted). Here, the special agent corroborated details about Norris's vehicle through the Maine Bureau of Motor Vehicles and about Norris's out-of-state travel by checking license plate reader data from

Massachusetts and by surveilling Norris's place of abode in Maine. And the information supplied to the special agents by different confidential informants was also consistent and therefore mutually corroborative. *See State v. Thompson*, 2017 ME 13, ¶ 17, 154 A.3d 614.

[¶48] Although other information, such as whether the informants had provided credible information in the past, would have bolstered the informants' reliability, such information is not required in every instance. *See Gates*, 462 U.S. at 230 (stating that although an informant's veracity, reliability, and basis of knowledge are relevant in determining the value of the information, these elements are not "entirely separate and independent requirements to be rigidly exacted in every case").

[¶49] We next consider whether the search warrant is supported by probable cause. Norris concedes that if we disagree with him as to the tracking warrant, then his challenge to the search warrant is moot because the search warrant affidavit contains the same assertions as the tracking warrant affidavit plus additional information from other sources. Although we need go no further given our conclusion above, we observe that, even if the tracking warrant had not been supported by probable cause, the search warrant affidavit contained sufficient information to satisfy the Fourth Amendment.

[¶50] In addition to the assertions described in the tracking warrant affidavit, the search warrant affidavit also included observations that MDEA special agents made about Norris while attempting to attach the tracking device to Norris's vehicle, information about Norris's interstate travel gained from the tracking device, and information from a CD. More specifically, the affidavit averred that the CD told an MDEA special agent that Norris traffics drugs across state lines, bringing up to two ounces each of heroin, powdered cocaine, and crack cocaine. The CD further stated that the CD orders heroin from Norris via text message a few times a week and that Norris delivers the drugs in a black car, possibly a Ford. While surveilling Norris, an MDEA special agent observed the CD contact Norris, confirming their association. The affidavit also averred that special agents observed five brief encounters over the course of an hour between Norris and other individuals in various locations around Newport. This activity was consistent with the information provided by the CI, CS, and CD that Norris sells drugs out of his vehicle and with the special agent's training on drug trafficking.

[¶51] "Evidence seized during the execution of a search warrant, which is based on information acquired by unconstitutional means, need not be excluded if (1) the information that was illegally obtained and used to support

the issuance of a warrant is excised from the affidavit, and (2) we determine that the judge or magistrate would have had probable cause to issue the warrant relying solely on the remaining information." *State v. Nadeau*, 2010 ME 71, ¶ 42, 1 A.3d 445 (quotation marks omitted)). Thus, if the tracking warrant had not been properly issued, then the information from the tracking device would have to be excised from the search warrant affidavit. That would leave the search warrant supported by the information provided by the three informants, the license plate reader and vehicle registration data, and the observations made by the special agents during their surveillance of Norris, which together furnish ample support for a finding of probable cause.[7]

[¶52] In sum, Norris waived his challenge to the tracking warrant and search warrant under the Maine Constitution because he failed to preserve the issue by presenting a developed argument based on an independent analysis of the relevant provision of the Maine Constitution. Norris's challenge to the tracking warrant and search warrant fails under the United States Constitution,

---

[7] Because we conclude that both the tracking warrant and the search warrant were supported by probable cause and that the search warrant would have been supported by probable cause even without the information obtained from the tracking device, we do not reach the State's alternative argument that the good-faith exception to the exclusionary rule could be applied to conclude that the evidence was properly admitted regardless of whether the warrants were properly issued. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984) (establishing the good faith exception).

28

and the evidence obtained from the execution of the warrants was properly admitted because each warrant was supported by probable cause.

**C.    The special agent's failure to fulfill multiple requirements of M.R.U. Crim. P. 41(g), though "subject to strong disapproval," does not require that the evidence be suppressed.**

[¶53]  Norris argues that the evidence obtained from the execution of the search warrant should be suppressed because the special agent failed to comply with the requirements of M.R.U. Crim. P. 41.  The noncompliance that Norris cites includes the special agent's failure to provide Norris with a copy of the warrant and a receipt for the seized property and to make an inventory of the seized property in Norris's presence.  The State concedes that these omissions were improper but argues that suppression is not warranted.  We review the trial court's findings for clear error, *see Nadeau*, 2010 ME 71, ¶ 51, 1 A.3d 445, and we review for an abuse of discretion the trial court's decision whether to sanction a party for noncompliance with a rule of criminal procedure that is not of constitutional import, *see State v. Mullen*, 2020 ME 56, ¶ 21, 231 A.3d 429.

[¶54]  The execution of a search warrant is governed by Rule 41, which provides, in relevant part:

> **(g) Execution and Return with Inventory.**  The warrant may be executed and returned only within 14 days after its date.

> Upon the expiration of the 14 days, the warrant must be returned to the Unified Criminal Docket designated in the warrant. *The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken.* If the person is not present, the officer shall leave the copy of the warrant and the receipt at the premises. The return shall be accompanied by a written inventory of any property taken. *The inventory shall be made in the presence of the person from whose possession or premises the property was taken, if the person is present, or in the presence of at least one credible person other than the applicant for the warrant.* It shall be verified by the officer. Upon request the justice or judge sitting in the Unified Criminal Docket designated in the warrant shall deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

(Emphasis added.)

[¶55] Nothing in the text or commentary of Rule 41 suggests that noncompliance with its ministerial demands should result in the exclusion of the evidence. We have previously ruled that, absent "persistent official disregard," such noncompliance will not invalidate the search and seizure. *State v. Appleton*, 297 A.2d 363, 372 (Me. 1972). Moreover, Norris has identified no prejudice resulting from the omissions. As the trial court noted, the special agent's failure to properly discharge the functions of Rule 41(g) is "subject to strong disapproval, [but] there is no evidence in the record indicating that such failures are widespread or frequent occurrences by the officer involved in this case or amongst Maine's law enforcement agencies."

The trial court's findings are supported by the record, and Norris has failed to meet his burden of showing that he was prejudiced by these errors.

The entry is:

Judgment affirmed.

James M. Mason, Esq. (orally), Handelman & Mason LLC, Brunswick, for appellant Nicholas W. Norris

Aaron M. Frey, Attorney General, and Jason Horn, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2021-826
FOR CLERK REFERENCE ONLY